## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD BALDWIN and  :  CIVIL ACTION - LAW
LAURA BALDWIN,       :  NO. 3:14-cv-02346-WJN
      Plaintiffs     :  (HONORABLE WILLIAM J. NEALON)
                     :
         v.            :
                     :
MONTEREY FINANCIAL    :
SERVICES, INC.,       :
      Defendant       :
                     :

## <u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

I. Introduction and Factual Background................................................1

II. Procedural History .......................................................................3

III. Standard of Review ....................................................................4

V. Argument ...................................................................................5

    A.    Defendant's Conduct Violated the TCPA.....................................5

        1.  Background on the TCPA.................................................5

        2.  There is a Genuine Issue of Material Fact as to When
             Plaintiffs Revoked Consent For Defendant To Call Their
             Cellular Telephones . ...................................................6

             a.  Revocation of Consent Under the TCPA..........................7

                i. A Rational Jury Could Find Plaintiffs Revoked
                   Consent to Call Their Cellular Telephones By
                   October 18, 2013............................................9

                  (a)  Plaintiff's August 25, 2013, Email and August 26,
                      2013 Letter to Prestige. .............................9

                  (b)  Plaintiffs' September 9, 2013, Call to Defendant....11

                  (c)  Prestige's September 11, 2013, Letter to
                      Defendant. ...........................................12

                  (d)  Defendant's September 17, 3013, Call to
                      Plaintiff's Attorney. ................................13

                  (e)  Defendant's October 17, 2013, Call to Plaintiffs.....13

    B.    Defendant's Conduct Violated the PaFcCEUA ...........................14

1.  There Exists a Genuine Issue of Material Fact as to Whether Defendant's Conduct Violated 73 P.S. §2770.4(b)(1)(ii). ................................................... 14

2.  There is a Genuine Issue of Material Fact as to Whether Defendant Violated 73 P.S. §2770.4(b)(2)(ii). ........................ 16

3.  There is a Genuine Issue of Material Fact as to Whether Defendant Violated 73 P.S. §2770.4(b)(4) and §2770.4(b)(4)(v)................................................. 17

4.  There is a Genuine Issue of Material Fact as to Whether Defendant Violated 73 P.S. §2770.4(b)(5)(x)........................ 19

5.  There is a Genuine Issue of Material Fact as to Whether Defendant Violated 73 P.S. §2770.4(b)(6) and §2770.4(b)(6)(i)................................................. 19

C.    Defendant's Conduct is an Intrusion of Plaintiffs' Privacy...........20

V. Conclusion ........................................................................................22

## TABLE OF AUTHORITIES

**CASES**

Berk v. J.P. Morgan Chase Bank. N.A., 2011 WL 4467746, *6-7 (E.D.Pa. Sep. 26, 2011)..............................................................................................21

Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1362-1363 (3d Cir. 1992) ......................................................................................4

Breslow v. Wells Fargo Bank. N.A., 867 F.Supp.2d 1316, 1319 (S.D.Fla. 2012) ..............................................................................................................11

Cable v. Allied Interstate, Inc., 2011 WL 5966542 (M.D.Pa. Nov. 29, 2012).21-22

Cavero v. Franklin Collection Serv., Inc., 2012 WL 279448, *3 (S.D.Fla. Jan. 31, 2012)......................................................................................................7

Coastal States Gas Corp. v. Department of Energy, 644 F.2d 969, 979 (3d Cir. 1981) ................................................................................................4,5

Country Floors, Inc. v. A Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991) ..........................................................................4

Desmond v. Phillips & Cohen Assoc., Ltd., 724 F.Supp.2d 562, 568-569 (W.D.Pa. 2010)...............................................................................................20, 21

Diaz v. D.L. Recovery Corp., 486 F.Supp.2d 474, 480 (E.D.Pa. 2007) ..........22

Elyazidi v. SunTrust Bank, 780 F.3d 227, 236 (4th Cir. 2015) ......................19

Gager v. Dell Fin. Servs. Inc., 72 F.3d 265, 269, 271, 273 (3d Cir. 2013).......6,7,8

Henderson v. Eaton, 2001 WL 969105, *2 (E.D.La. Aug. 23, 2001)..............16

Hosseinzadeh v. M.R.S. Associates Inc., 387 F.Supp.2d 1104, 1008 (C.D.Ca. 2005)...............................................................................................16

In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238,

258 (3d Cir. 1983) ........................................................................... 4-5

Jarzyna v. Home Props., L.P., 763 F.Supp.2d 743, 749 (E.D.Pa. 2011) .......... 14

Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985) ................ 18

Johnson v. Credit Prot. Ass'n, L.P., 2012 WL 5875605, *4 (S.D.Fla. Nov 20, 2012)
.................................................................................................. 7

Leahey v. Franklin Collection Serv., Inc., 2012 WL 5279831, *4 (A.D.Ala.
Feb. 4, 2010)................................................................................ 22

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
.................................................................................................. 4

Mims v. Arrow Fin. Servs., LLC, 132 S.Ct. 740, 744 (2012) ...................... 5

Olney v. Job.com, Inc., 2014 WL 1747674, *3 (E.D.Ca. May 1, 2014) .......... 11

Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1246 & 1255-1256
(11th Cir. 2014) ........................................................................ 8, 11

Regan v. Law Offices of Edwin A. Abrahamsen & Assoc., P.C., 2009 WL
4396299, *6 (E.D. Pa. Dec. 1, 2009)................................................. 18

Sasscer v. Donnelly, 2011 WL 6780954, *6 (E.D.Pa. Dec. 1, 2009) ............... 14

Saunders v. NCO Financial Systems, Inc., 910 F.Supp.2d 464
(E.D.N.Y. 2012) .......................................................................... 8

Shand-Pistelli v. Professional Account Services, Inc., 2010 WL 2978029, *5
(E.D.Pa. July 26, 2010) ................................................................. 18

Skinner v. Bluestem Brands, Inc., 2015 WL 4135269 (S.D. Miss. July 8, 2015) .
.................................................................................................. 9

Smith v. Progressive Fin. Servs., 2013 WL 3995004, *5 (D. Oregon
Aug. 1, 2013)............................................................................... 8

Soppet v. Enhanced Recovery Company, LLC, 679 F.3d 637, 640-642

(7th Cir. 2012) ................................................................................ 11

Stuart v. ARC Resources, Inc., 2011 WL 904167, *6 (E.D.Pa. Mar. 16, 2011)
................................................................................................ 21

Tucker v. Merck & Co., 102 Fed.Appx. 247, 256 (3d Cir. 2004) ................... 20

**STATUTES**

Fair Debt Collection Practices Act, 15 U.S.C. §1692f ....................... 18, 19

Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat.
Ann. §2270.4(a) ........................................................................... 14

Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat.
Ann. §2270.4(b)(1)(ii) ............................................................... 14, 15

Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat.
Ann. §2270.4(b)(2)(ii) ................................................................. 16

Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat.
Ann. §2270.4(b)(4) and §2270.4(b)(4)(v) ....................................... 17

Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat.
Ann. §2270.4(b)(6) ....................................................................... 19

Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ............... 5

**OTHER**

Fed. R. Civ. P. 56(a) ........................................................................ 3

In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of
1991, Soundbite Communications, Inc., 27 F.C.C. Rcd. 15391, 15398
(Nov. 26, 2012) .......................................................................... 6,7

In re Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991, 23 F.C.C. 559, 565 (Jan. 4, 2008)................... 10

In re the Matter of Rules and Regulations Implementing the Telephone

Consumer Protection Act of 1991, --- FCC Rcd --- (July 10, 2015). ..............8

Restatement (Second) of Torts §9892A, cmt. i. (1979) ...................................7

S.Rep. No. 102-178,at 5 (1991), *reprinted* in 1991 U.S.C.C.A.N. 1968, 1972 ......................................................................................................................5-6

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Richard Baldwin and Laura Baldwin (hereinafter collectively "Plaintiffs"), by and through their counsel, Kimmel & Silverman, P.C., file their opposition to the Motion for Summary Judgment filed by Defendant, Monterey Financial Services, Inc. (hereinafter "Defendant"). In support of their opposition, Plaintiff state as follows:

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Beginning in October 2013 and continuing through March 2014, Defendant repeatedly and continuously called Plaintiffs on their home and cellular telephones in order to collect an alleged consumer debt owed to Prestige Software (a/k/a Prestigious Software)(hereinafter "Prestige"). Docket Entry No. 1, Ex. A, ¶¶12, 13, & 17 and Exhibit A, Defendant's Account Notes. Before the account was placed with Defendant for servicing on or about on August 31, 2013, Plaintiffs informed Prestige by email on August 25, 2013, and letter on August 26, 2013, that they wanted to cancel their contract, stating, in part, "Destroy, via shredding, any documents that contain our personal and confidential information." See Exhibit B, Plaintiff's Letter. Prestige acknowledged receipt in a letter dated August 29, 2013. See Exhibit C, August 29, 2013, letter from Prestige. Plaintiffs understood that they would not be receiving any further communications related to this matter, as

they had cancelled the contract and revoked any consent to contact them about this contract.

Then, on September 9, 2013, after receiving Defendant's first collection letter, Plaintiff Richard Baldwin called Defendant. <u>See</u> Exhibit A, pgs. 1-2. He told Defendant he considered his agreement with Prestige canceled, refused to provide his cell phone number to Defendant, and told them to call his lawyer, Richard Day, thereby indicating that he did not want Defendant to contact him. <u>See</u> Exhibit A, pgs. 1-2. On or about September 11, 2013, Defendant received information from Prestige confirming that Plaintiffs had attempted to cancel their contract by letter and email; however, Prestige refused to cancel their contact, as the cancellation came a few days after the 3-day period to rescind the contract without obligation. <u>See</u> Exhibit A, pgs. 4-5. Further, on or about September 17, 2013, Defendant spoke to Attorney Day, who told them he would try to get documentation of the cancellation, buy did not give Defendant permission to call the Plaintiffs. <u>See</u> Exhibit A, pg. 4. Yet, on October 17, 2013, Defendant called Plaintiff Laura Baldwin. <u>See</u> Exhibit A, pgs. 5-6. She told them to talk to Attorney Day and that they had cancelled the contract. <u>See</u> Exhibit A, pgs. 5-6. Plaintiff Laura Baldwin got her husband, Plaintiff Richard Baldwin, who told Defendant to "tear it up" and refused to confirm his personal information. <u>See</u>

Exhibit A, pgs. 5-6.  Thus, Plaintiffs again informed Defendant that they did not want to be contacted.

Yet, Defendant made at least 86 phone calls to Plaintiffs over 166 days.  <u>See</u> Exhibit A.  Many of these calls were autodialed to Plaintiff's cellular telephones, as well as to their home and work telephones.  <u>See</u> Exhibit A.  Defendant also sent Plaintiffs emails and letters demanding payment.   <u>See</u> Exhibits D and E, Defendant's Emails and Letters to Plaintiffs.   Finally, after receiving a representation letter from Kimmel & Silverman on March 31, 2014, Defendant still called Plaintiffs on April 1, 2014.  <u>See</u> Exhibits A and F, USPS Tracking Receipt.

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint in this matter in Schuylkill County Court of Common Pleas on November 24, 2014, and Defendant removed to this Court on December 10, 2014.  <u>See</u> Docket Entry No. 1, Ex. A.  In their Complaint, Plaintiffs alleged that Defendant's actions violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; the Pennsylvania Fair Credit Extension and Uniformity Act ("PaFCEUA"), 73 P.S. § 2270 *et seq.*; and the Pennsylvania Common Law Tort of Invasion of Privacy.  Docket Entry No.1, Ex. A.  Following discovery, Defendant filed a Motion for Summary Judgment on September 15, 2015.  <u>See</u> Doc. No. 14.  Plaintiffs now file their opposition to that motion.

## III.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a motion for summary judgment will only be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).  The Court must view the evidence in the light most favorable to the non-movant when ruling on a motion for summary judgment. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing the motion for summary judgment is entitled to have their allegations taken as true, to receive the benefit of the doubt when their assertions conflict with those of the movant and to have inferences from the underlying facts drawn in their favor. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F. 2d 1358, 1362-63 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." See Big Apple BMW, supra., citing to Country Floors, Inc. v. A Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

In analyzing the moving party's burden under Rule 56, the Third Circuit has stated that, "if there is any evidence in the record, from any source, from which a reasonable inference in the respondent's favor may be drawn, the moving party cannot obtain a summary judgment, no matter how many affidavits are filed." See

In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 258 (3d Cir. 1983), reversed on other grounds, citing to Coastal States Gas Corp. v. Department of Energy, 644 F.2d 969, 979 (3d Cir. 1981). The "burden then is insurmountable." See Id.

## IV.   ARGUMENT

### A.   Defendant's Conduct Violated the TCPA

#### 1.   Background on the TCPA

In response to voluminous complaints regarding abuses of telephone technology resulting in invasions of privacy, Congress passed the Telephone Consumer Protection Act ("TCPA") authorizing private causes of actions for certain specified conduct, and directing the Federal Communications Commission (FCC) to implement regulations concerning other conduct. Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012). Prominently among these provisions, § 227(b)(1)(A)(iii), made it unlawful to without prior express consent "to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a...cellular telephone service...or any service for which the called party is charged for the call." See 47 U.S.C. §227(b)(1)(A)(iii). Congress singled out recorded calls as particularly invasive and annoying because "these automated calls cannot interact with the consumer" and "do not allow the caller to feel the frustration of the called party." See S. Rep.

No. 102-178, at 5 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972.

Consistent with the strong Congressional intent, the FCC and the Third Circuit both have stated that once a consumer gives consent to calls under the TCPA, he can revoke that consent at any time and stop those calls. In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15398 (2012); Gager v. Dell Financial Services, LLC, 727 F.3d 265, 271 (3d Cir. 2013).   The Court found this was consistent with the established Third Circuit mandate to read remedial statutes like the TCPA broadly to protect consumers. Gager, at 271.

### 2.   There is a Genuine Issue of Material Fact As to When Plaintiffs Revoked Consent for Defendant to Call Their Cellular Telephones

Defendant argues that it is entitled to summary judgment solely because Plaintiffs provided their consent to Prestige (the creditor) to call their cellular telephones, and that Plaintiffs did not revoke consent until the undersigned sent a certified letter on March 27, 2014. See Doc. No. 17 pgs. 7-8, 13.  Contrary to Defendant's contention, there is a genuine issue of material fact in dispute as to the date Plaintiffs' revoked consent to call their cellular telephones.

Specifically, Plaintiffs assert that they revoked consent before Defendant's calls began, by cancelling their contract with Prestige.  On August 25, 2013, Plaintiff's sent an email to Prestige cancelling the contact, and on August 26, 2013,

the sent a letter. See Exhibits B and C. Moreover, between September 9, 2013, and October 18, 2013, Plaintiffs statements to Defendant as well as their conduct evidence their intention to revoke consent to call their cellular telephones.

### a.    Revocation of Consent Under the TCPA

The Third Circuit Court of Appeals held that the TCPA allows consumers to revoke consent to automated calls at any time. Gager at 271. Additionally, having determined that Congress adopted the common law meaning of consent in the TCPA, the Third Circuit stated, "[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to consider the particular conduct." Id. (citing Restatement (Second) of Torts §9892A. cmt. i (1979)). Moreover, the Third Circuit's interpretation is based, in part, on similar findings by the FCC, which held in 2012 that a consumer could revoke prior express consent to text messages (treated as calls under the TCPA). Gager, at 269 (citing In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Soundbite Communications, Inc., 27 FCC Rcd. 15391 (Nov. 26, 2012).

The cases relied upon by Defendant – Smith v. Progressive Fin. Servs., Johnson v. Credit Prot. Ass'n, L.P., and Cavero v. Franklin Collection Serv., Inc., are irrelevant to this Court's consideration of the issue of consent, as none of these cases deal with the issue of revocation of consent, are outside this district, and pre-

date the Third Circuit's decision in <u>Gager</u>. Regarding Defendant's reliance on <u>Saunders v. NCO Financial Systems</u>, it is misplaced, as this is a decision from a district court in the Second Circuit and subsequent to that decision, the Third Circuit held in <u>Gager</u> that a person can revoke consent. <u>Saunders</u>, 910 F.Supp.2d. 464 (E.D.N.Y. 2012).

Further, the Third Circuit's holding that "[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to consider the particular conduct," is consistent with the FCC's newest regulations. <u>Gager</u> at 271; <u>In re the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, --- FCC Rcd --- (July 10, 2015). Specifically, in July 2015, the FCC released new regulations providing that a consumer may revoke consent under the TCPA by any method which under "the totality of the facts and circumstances" could reasonably be expected to communicate that intent. <u>Id</u>. at ¶64. Additionally, revocation may be oral or in writing. <u>Id</u>.; <u>Osorio v. State Farm Bank, F.S.B.</u>, 746 F.3d 1242, 1255-1256 (11th Cir. 2014). Accordingly, the issue of whether consent was revoked is heavily fact-based and is an appropriate question for a jury.

Finally, the authorization Plaintiffs signed in their application, does not change this standard for revocation. In fact, in <u>Gager</u>, the Third Circuit held that authorization to call a plaintiff was "plainly not an essential term to a credit

agreement", so consent to call could still be revoked. <u>Gager</u> at 273. Citing <u>Gager</u>, the U.S. District Court for the Southern District of Mississippi, in <u>Skinner v. Bluestem Brands, Inc.</u>, 2015 WL 4155269, at *2-3 (S.D. Miss. July 8, 2015), held an authorization almost identical to Defendant's here ("You expressly consent to receiving calls and messages, including autodialed and prerecorded calls...") could be revoked as the contract was silent whether plaintiff could or could not revoke consent, consent traditionally can be revoked, and if the provision were to be read as a permanent waiver of TCPA rights, it would have to be clear enough for plaintiff to know she was waiving those rights. So, the issue in dispute is when revocation occurred.

> i. *A Rational Jury Could Find Plaintiffs Revoked Consent to Call Their Cellular Telephones By October 18, 2013*

A rational jury could find that Defendant knew or should have known that Plaintiffs revoked consent for Defendant to call their cellular telephones by October 18, 2013, based on any one of the following communications separately or taken together:

> (a) *Plaintiffs' August 25, 2013, Email and August 26, 2013, Letter to Prestige*

Less than a week after signing the contract with Prestige, Plaintiffs notified Prestige, through email on August 25, 2013, and letter on August 26, 2013 (dated

August 24, 2013) that they intended to cancel their contact.  See Exhibit B.  The letter stated, "This is giving formal written notice to you within three business days to cancel our agreement #FM082013BR without obligation or penalty."  Id. Further, the letter directed Prestige to, "Destroy, via shredding, any documents that contain our personal and confidential information."  Id.

Whether Plaintiffs could legally cancel the contract is irrelevant to whether they revoked consent to call their cellular telephone.  From Plaintiff's letter and email, a rational juror could conclude that Plaintiffs revoked consent to call their cellular telephone, as they had attempted to end the business relationship for which they gave Prestige their phone numbers.

Moreover, as Plaintiffs revoked consent to receive automated calls under the TCPA by August 26, 2015, consent no longer existed when Defendant received Plaintiffs' account from Prestige on August 30, 2015; thus, Defendant did not have express prior consent to call Plaintiff's cellular telephones.  Further, Plaintiffs never gave Defendant consent to call their cellular telephones, never provided their cellular telephone numbers to Defendant, or signed a contract with Defendant. Thus, all of Defendant's calls to Plaintiffs' cellular telephones using an automated dialer and automated/pre-recorded messages violated the TCPA, as they did not have Plaintiffs' express consent.

Finally, because consent to automated calls is an affirmative defense under

the TCPA, Defendant must prove consent existed when it called and will not be excused even for an honest mistake as to its existence or applicability. See Soppet v. Enhanced Recovery Company, LLC, 679 F.3d 637, 640-642 (7th Cir. 2012); Osorio at 1246 & 1251-1252; see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 565 ¶10 (Jan. 4, 2008); Breslow v. Wells Fargo Bank, N.A., 867 F.Supp.2d 1316, 1319 (S.D. Fla. 2012); Olney v. Job.com, Inc., 2014 WL 1747674, at *3 (E.D.C.A. May 1, 2014). Accordingly, there is a genuine issue of material fact as to whether Plaintiffs' revoked consent for automated calls to their cellular telephones in August 2013.

> (b)  Plaintiffs' September 9, 2013, Call to Defendant

After receiving a letter from Defendant in the mail, Plaintiff Richard Baldwin (hereinafter "Mr. Baldwin") called Defendant on September 9, 2013. The recording of the call shows that Mr. Baldwin informed Defendant that the contract had been cancelled, refused to give them his cell phone number, and told them to call his attorney. See Exhibit G, Recording. In fact, when asked for his cellular telephone number, Plaintiff told Defendant:

> Defendant: How about your cell phone number, sir?
> Baldwin:   You don't need that. This -- this has been cancelled.
> Defendant: Okay. Who was it cancelled with?
> Baldwin:   Prestige.

Id. Defendant knew, or should have known, that Plaintiffs did not want to be

Page 11 of 23

called, as they cancelled the contract with Prestige and Mr. Baldwin refused to provide his cellular telephone number.  Moreover, when Defendant told Mr. Baldwin that it did not agree the account was cancelled, he did not change his mind.  Instead, Mr. Baldwin repeated that he thought it should be cancelled, told them to talk to his attorney, gave them his attorney's name and phone number, told them about the email and letter he sent to Prestige, and ended the call with stating, "Talk to my attorney about this, okay."  Id.

A reasonable jury could conclude that Mr. Baldwin's refusal to give his cell phone number, statement that Defendant did not need that information, insistence that the contract should have been cancelled, and referral of Defendant to his attorney were clear statements that he did not want Defendant to call him and thus revoked consent.  As a result, there is a genuine issue of material fact as to whether Plaintiffs revoked consent to call their cellular telephones on September 9, 2013.

         (c)    *Prestige's September 11, 2013, Letter to Defendant*

Additionally, Defendant received a letter from Prestige dated September 11, 2013, confirming that Plaintiffs sent Prestige a letter on August 26, 2013, and an email on August 25, 2013, seeking to cancel the contract.  See Exhibit A, pgs. 4-5. Although Defendant may not have requested copies of these documents, a rational jury could conclude that from this 09/11/13 letter as well as Mr. Baldwin's phone

call two days earlier, the Defendant knew or should have known the Plaintiffs revoked consent to receive telephone calls to their cellular telephones.

      (d)    *Defendant's September 17, 2013, Call to Plaintiffs' Attorney*

On September 17, 2013, Defendant called Plaintiffs' attorney, Richard Day. Mr. Day advised Defendant that Plaintiffs had determined the contract was not a good deal and had attempted to cancel it. See Exhibit A, pgs. 5-6. Notably, Mr. Day never told Defendant that he did not represent Plaintiffs; that Plaintiffs no longer considered the contract cancelled; or that Defendant had consent to call Plaintiffs. Id. Clearly, having been informed that Plaintiffs were represented by Counsel, Defendant knew or should have known that any prior consent to placed autodialed calls to Plaintiffs' cellular telephones had been revoked.

      (e)    *Defendant's October 17, 2013, Call to Plaintiffs*

Finally, on October 17, 2013, Defendant called Plaintiff Laura Baldwin (hereinafter "Mrs. Baldwin"). She told Defendant, "Actually, it's being handled by an attorney right now." See Exhibit H, Recording. Defendant argued with Mrs. Baldwin, causing her to put her husband, Mr. Baldwin, on the phone. Id. Mr. Baldwin, again, disputed the contract and told Defendant, "You can tear it up, then." Id. Combined with Plaintiffs' prior conversations with Defendant; the September 11, 2013, letter from Prestige to Defendant; Defendant's conversations

with Mr. Day; and the August 25, 2013, email and August 26, 2013, letter cancelling the contract, Plaintiffs made it clear that they did not want to be contacted by Defendant regarding this alleged debt. Thus, a rational jury could conclude they had revoked consent. Therefore, as a genuine issue of material fact exists related to the date Plaintiffs' revoked consent to call their cellular telephones, this Honorable Court should deny Defendant's Motion.

**B.   Defendant's Conduct Violated the PaFCEUA**

The PaFCEUA is a state analogue of the federal Fair Debt Collection Practices Act ("FDCPA"), so that, as provided by statute, any violation of the FDCPA is a per se PFCEUA violation. Sasscer v. Donnelly, 2011 WL 6780954, at *3 (M.D.Pa. Dec. 27, 2011) (citing 73 Pa. Cons. Stat. Ann. §2270.4(a)). Moreover, just like the FDCPA, the PaFCEUA is "construed liberally to effect its object of preventing unfair or deceptive practices." See Jarzyna v. Home Props., L.P., 763 F.Supp.2d 743, 749 (E.D.Pa. 2011) (citing Commonwealth v. Monumental Props., Inc., 329 A.2d 812, 817 (Pa. 1974)). Each of Plaintiffs' PaFCEUA claims presents an issue to be tried by a jury:

**1.   There exists a genuine issue of material fact as to whether Defendant's conduct violated 73 P.S. § 2770.4(b)(1)(ii).**

Section§ 2270.4(b)(1)(ii) provides, "any creditor communicating with any person other than the consumer for the purpose of acquiring location information

about the consumer shall...not state that such consumer owes any debt." Here, Defendant called Shawn York, a third party, and left a message stating, in part, "I have left you several messages and have gotten no returns. And I do need you to make it a priority and return my call today to **resolve this outstanding matter**." (emphasis added). See Docket Entry No. 15-2, 55:12-25; 56:1-8. Also, Defendant contacted Donna Moyer, a third party, and left a message stating, "I've left several messages which were not returned, and I do need you to make it a priority and return my call today." See Docket Entry No. 15-2, 58:24-25; 59:1-12. In both messages, Defendant identified itself as calling "from the office of Monterey regarding WRCI." Id.

Defendant claims that the voicemail messages it left Shawn Yorke and Donna Moyer neither state nor infer that Plaintiffs owed a debt. The messages, however, clearly state that Defendant is calling from a business office, working on behalf of another company; that it left messages without getting a response; and that the matter is important. Logically, a person receiving these messages would understand that Monterey was calling about a debt. While there is little case law on this issue, in the related context of determining if communications relate to a debt under the FDCPA, courts have found a debt collector's letter to an employer requesting earnings information and confirmation if debtor was still employed, and, if not, the name of the present employer, as well as voicemail message stating

it was about a "personal business matter that requires your immediate attention", and a message regarding "very important information to discuss with you in reference to a file that has been forwarded to my office" to imply existence of a debt. <u>Henderson v. Eaton</u>, 2001 WL 969105, at *2 (Aug. 23, 2001); <u>Foti v. NCO Financial Systems, Inc.</u>, 424 F.Supp.2d 643, 648 (S.D.N.Y. 2006); and <u>Hosseinzadeh v. M.R.S. Associates, Inc.</u>, 387 F.Supp.2d 1104, 1108 (C.D.Cal. 2005).

### 2.   There is a genuine issue of material fact as to whether Defendant violated 73 P.S. § 2770.4(b)(2)(ii).

There is a genuine issue of material fact as to whether Defendant violated § 2770.4(b)(2)(ii), which provides that "...a creditor may not communicate with a consumer in connection with the collection of any debt: if the creditor knows the consumer is represented by an attorney with respect to such debt and has knowledge or for can readily ascertain such attorney's name and address...." Here, on March 27, 2014, the undersigned sent written correspondence to Defendant advising of its representation of Plaintiffs. Defendant received the letter of representation on March 31, 2014. <u>See</u> Exhibit F. Nevertheless, on April 1, 2014, Defendant contacted Plaintiffs at 1:03 p.m. PT/4:03 pm EST. <u>See</u> Exhibit A, pg. 19. The PaFCEUA is a strict liability statute. Defendant knew Plaintiffs were represented as soon as it received the letter. Therefore, a reasonable jury could

conclude Defendant violated the PaFCEUA; thus, Defendant's Motion for Summary Judgment on this claim should be denied.

### 3. There is a genuine issue of material fact as to whether Defendant violated 73 P.S. §§ 2770.4(b)(4) and 2770.4(b)(4)(v).

There is a genuine issue of material fact as to whether Defendant violated §§ 2770.4(b)(4) and 2270.4(b)(4)(v), which provide that "a creditor may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt...the following conduct is a violation of this paragraph:...causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person." Viewing the evidence in light most favorable to Plaintiffs as the non-moving party, the evidence in the record is sufficient to create a genuine issue of a material fact as to whether Defendant's calls were place with the intent to annoy, abuse or harass. Significantly, Defendant made at least 86 telephone calls to Plaintiffs over 166 days, including making multiple calls a day. Furthermore, on numerous occasions, Plaintiffs answered Defendant's telephone calls and immediately hung up, signaling to Defendant that its calls were unwanted.

A reasonable jury can therefore determine that the high call volume violates the PaFCEUA. These sections of the PFCEUA use identical language to the

Page 17 of 23

federal Fair Debt Collection Practices Act's §1692d and §1692d(5). When faced with a claim of harassment under the FDCPA, Courts overwhelmingly defer to a jury to determine whether the defendant acted with the intent to harass. See e.g. Regan v. Law Offices of Edwin A. Abrahamsen & Assoc., P.C., 2009 WL 4396299, *6 (E.D. Pa. Dec. 1, 2009); Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985).

In its brief, in addition to relying on cases that are outside this district, Defendant directs this Court to Shand-Pistelli v. Professional Account Services, Inc. to support its contention that the number of calls it made to Plaintiff does not rise to the level of harassment. Defendant, however, erroneously cites the Court's grant of summary judgment under a different FDCPA provision - §1692f - which bans "unfair and unconscionable" conduct not otherwise covered the FDCPA. However, the Eastern District found that a rational jury **could** find that calling plaintiff 73 times over 10 days was harassing and thus **denied** summary judgment on a claim under FDCPA §1692d(5), which, as stated above, is identical to §2770.4(b)(4)(v).

As demonstrated above, a reasonable jury could find a violation of PaFCEUA §§ 2770.4(b)(4) and 2770.4(b)(4)(v) based on call volume alone. However, if this is not sufficient, Plaintiffs also allege that Defendants continued to call them after they told Defendant that they disputed the debt. For either or both

Page 18 of 23

of these reasons, Defendant's summary judgment should be denied as to the §§ 2770.4(b)(4) and 2770.4(b)(4)(v) claims.

**4.    There is a genuine issue of material fact as to whether Defendant violated 73 P.S. §§ 2770.4(b)(5)(x).**

Regarding § 2770.4(b)(5)(x), there is evidence showing Defendant violated this provision by making misleading or false statements.   Specifically, in its November 12, 2013, email, Defendant claimed, "Ignoring our requests for payment will force us to declare the unpaid balance due immediately and/or place your account with a collection agency."   See Exhibit D.   Not only did it not intend to take such action, Defendant was both the servicer and collection agency for Prestige; thus, its statement to Plaintiffs was false.

**5.    There is a genuine issue of material fact as to whether Defendant violated 73 P.S. §2770.4(b)(6) and 2770.4(b)(6)(i).**

Looking at the PaFCEUA as a state analogue of the FDCPA, § 2770.4(b)(6) models §1692f of the FDCPA, with both broadly prohibiting a debt collector from using "unfair or unconscionable means to collect...any debt."   See 73 P.S. §2770.4(b)(6) and 15 U.S.C. §1692f.   Just like § 1692f, § 2770.4(b)(6) both prohibits a non-exclusive list of specific types of unfair and unconscionable behavior and has a catch-all provision allowing it to prohibit other "unfair and unconscionable acts."   Here, Plaintiffs claim that Defendant acted unfairly or unconscionably by failing to update its records to restrict all calls to Plaintiffs after

they disputed the debt and refused to pay it as well as by contacting their friends, Shaun Yorke and Donna Moyer, regarding a debt alleged to be owed by Plaintiffs. Further, Plaintiffs contend that Defendant sought to collect an amount not owed, as they sought to cancel the contract. Thus, there exists a material issue of fact as to whether Defendant has violated this section as a rational jury could find that all of these actions taken together are unfair or unconscionable.

### C.     Defendant's Conduct is an Intrusion of Plaintiffs' Privacy

There exists a genuine issue of material fact as to whether Defendant's conduct is substantially and highly offense regarding Plaintiffs' claim for Intrusion Upon Seclusion.   To maintain a privacy claim on intrusion upon seclusion in Pennsylvania, a plaintiff must prove that: (1) there was an intentional intrusion; (2) upon his solitude or seclusion, or his private affairs; (3) that the intrusion was substantial; and (4) highly offense.  See Desmond v. Phillips & Cohen Assoc., Ltd., 724 F.Supp.2d 562, 568-569 (W.D.Pa. 2010) (citing Tucker v. Merck & Co., 102 Fed.Appx. 247, 256 (3d Cir. 2004)).

Here, Defendant admits to making at least 86 calls to Plaintiffs over 166 days and to at least five phone numbers.  Defendant also sent Plaintiffs emails demanding payment of various amounts on: October 21, 2013; November 12, 2013; and November 25, 2013.  The tort of Intrusion Upon Seclusion, applies generally and in the context of debt collection where, "telephone calls are repeated

with such persistence and frequency that the behavior rises to the level of placing a substantial burden to one's existence such that his privacy is invaded." Id. (internal citations omitted).

Like Desmond, the U.S. District Court for the Western District of Pennsylvania denied Defendant's summary judgment motion because the facts on record showed it called the plaintiff at least fourteen times, including eight times during a nine-day period and six times during a sixteen-day period. Id. at 569. Similarly, the United States District Court for the Eastern District of Pennsylvania concluded in Berk v. J.P. Morgan Chase Bank, N.A., 2011 WL 4467746, at *6-7 (E.D.Pa. Sept. 26, 2011), that twenty or more calls over two years at four different phone numbers was enough to create a question of material fact for a jury.

Defendant, in its motion, directs this Honorable Court to Stuart v. AR Resources, Inc., 2011 WL 904167 (E.D.Pa. March 16, 2011) to support its contention that Plaintiffs cannot maintain an Intrusion Upon Seclusion claim. Stuart is distinguishable from this instant matter, as the plaintiff only plead that she received harassing phone calls and could **not** "specify the number or substance of the calls." Stuart, 2011 WL 904167, at *6. Further, Desmond and Berk are not alone in finding that repeated collection calls can rise to the level to sustain a seclusion on intrusion claim. See Cable v. Allied Interstate., Inc., 2011 WL

5966542 (M.D.Pa. Nov 29, 2012); and Diaz v. D.L. Recovery Corp., 486 F.Supp.2d 474, 480 (E.D.Pa. 2007).

Finally, Plaintiffs cite more than just the number and frequency of phone calls to support their intrusion upon seclusion claim. They also allege that Defendant sent them numerous emails, as well as the contents of Defendant's calls. A rational jury can consider all of these facts as additional evidence and in the context of the inherently embarrassing nature of debt collection. See Leahey v. Franklin Collection Serv., Inc., 2012 WL 5279831, at *4 (A.D. Ala. Feb. 4, 2010).

Thus, there exists a genuine issue of material fact in dispute; therefore, Defendant's Motion for Summary Judgment should be denied as to the Intrusion Upon Seclusion claim.

## V.   CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,

DATED: 10-26-15                 By:*/s/ Craig Thor Kimmel*_____
                               CRAIG THOR KIMMEL
                               Kimmel & Silverman, P.C
                               30 East Butler Pike
                               Ambler, PA 19002
                               Telephone: (215) 540-8888
                               Facsimile (877) 788-2864
                               Email: kimmel@creditlaw.com
                               Attorney for Plaintiffs