## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD BALDWIN, ET AL.,          :
          Plaintiffs          :          CIVIL ACTION NO. 3:14-CV-2346
                                    :          (Judge Nealon)
          v.          :
                                      :
MONTEREY FINANCIAL          :
SERVICES, INC.,          :
          Defendant          :

## MEMORANDUM

On November 24, 2014, Plaintiffs, Richard and Laura Baldwin, filed a complaint in the Court of Common Pleas of Schuylkill County. (Doc. 1). Plaintiffs allege that they received a number of communications from Defendant, Monterey Financial Services, Inc., regarding the collection of a debt. Plaintiffs also claim that two (2) of their friends were contacted by Defendant regarding that debt. (Doc. 1-1). As a result of these communications, Plaintiffs seek relief for Defendant's violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"); multiple violations of the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, et seq. ("FCEUA"); and a pendent state tort claim for invasion of privacy by intrusion upon seclusion. (Id. at pp. 7-10). On December 10, 2014, Defendant removed the matter to this Court. (Id.).

On September 15, 2015, Defendant filed a motion for summary judgment, supporting brief, statement of material facts, and an affidavit in support. (Docs.

14-16).  On October 26, 2015, Plaintiffs filed a brief in opposition and statement of material facts.  (Docs. 20-21).  On November 11, 2015, Defendant filed a reply brief and statement of material facts.  (Docs. 23-24).  On December 9, 2015, Plaintiffs filed a motion for leave to file a surreply and supporting brief, (Docs. 28-29), which was opposed by Defendant.  (Doc. 31).  Plaintiffs' motion to file a surreply was granted, and Plaintiffs' surreply was filed.  (Docs. 35, 36). Defendant then filed a reply to the surreply.  (Doc. 37).  Accordingly, Defendant's motion for summary judgment having been fully briefed is now ripe for disposition.  For the reasons set forth below, Defendant's motion for summary judgment will be denied in part and granted in part.

## I.    <u>STANDARD OF REVIEW</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340 (3d Cir. 1990).  "A dispute is 'genuine' only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is 'material' only if it might affect the outcome of the action under the governing law." <u>Shank v. Experian Info. Solutions, Inc.</u>, 2016 U.S. Dist. LEXIS 2679, at *1 (M.D. Pa.

Jan. 11, 2016) (Jones, J.) (citing <u>Sovereign Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d 162, 172 (3d Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once this showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990). "[T]he non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial." <u>Shank</u>, 2016 U.S. Dist. LEXIS 2679, at *2 (citing <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 762, 773 (3d Cir. 2013)). In particular, for a non-moving party to prevail on a motion for summary judgment, they "'must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.'" <u>McGlynn v. Reliance Standard Life Ins. Co.</u>, 2015 U.S. Dist. LEXIS 168589, at *9-10 (M.D. Pa. 2015) (Caputo, J.) (quoting <u>Galli v. New Jersey Meadowlands Comm'n</u>, 490 F.3d 265, 270 (3d Cir. 2007)). "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" <u>Galli</u>, 490 F.3d at 270 (quoting <u>Hugh v. Butler Cnty. Family YMCA</u>,

418 F.3d 265, 267 (3d Cir. 2005)).

All inferences "should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co., 24 F.3d 508, 512 (3d Cir. 1994) (quoting Big Apple BMW, Inc. v. BMW of North Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)). Moreover, when evaluating a motion for summary judgment, a court "should not evaluate credibility or weigh the evidence." Shank, 2016 U.S. Dist. LEXIS 2679, at *2 (citing Guidotti, 716 F.3d at 772).

## II.   STATEMENT OF FACTS

On August 20, 2013, Plaintiffs entered into an agreement with Prestigious Software Ltd. ("Prestigious").  (Doc. 15, p. 3); (Doc. 21, p. 2).  In executing the agreement with Prestigious, Plaintiffs provided a home telephone number and a cellular telephone number.  (Id.).  The agreement states that it could be canceled "without penalty or obligation" within three (3) days of its execution.  (Doc. 15, p. 4); (Doc. 21, p. 3).  The agreement reads, in relevant part, that:

> YOU MAY CANCEL THIS AGREEMENT WITHOUT
> PENALTY OR OBLIGATION AT ANY TIME PRIOR TO
> MIDNIGHT OF THE THIRD (3RD) BUSINESS DAY FROM
> YOUR EXECUTION OF THIS AGREEMENT, TO CANCEL
> THIS AGREEMENT, YOU MUST NOTIFY LICENSOR IN

> WRITING OF YOUR INTENT TO CANCEL.  YOUR
> NOTICE OF CANCELLATION SHALL BE EFFECTIVE
> UPON THE DATE SENT AND SHALL BE SENT TO:
> PRESTIGIOUS SOFTWARE LTD, 3790 Paradise Road, Suite
> 210, Las Vegas, NV 89169.

(Doc. 15, p. 4); (Doc. 21, p. 3).  On August 25, 2013, Plaintiffs sent email

correspondence to Prestigious in an attempt to cancel the agreement.  (Doc. 15, pp.

4-5); (Doc. 21, pp. 3-4); (Doc. 24, p. 1).  On August 26, 2013, Plaintiffs mailed a

letter to Prestigious in an attempt to cancel the agreement.  (Doc. 15, p. 5); (Doc.

21, p. 4).

As part of the agreement, Plaintiffs completed a credit application, wherein

they each provided a cellular telephone and the names of three (3) references.

(Doc. 15, pp. 3-4); (Doc. 21, pp. 2-3).  Specifically, Plaintiffs provided the phone

numbers of Donna Moyer and Shawn Yorke on the credit application.  (Doc. 15, p.

4); (Doc. 21, p. 3).  The credit application states, in relevant part, that:

> I HEREBY AUTHORIZE any holder thereof, the creditor, any
> attorney, debt collector or collection agency (their agents or
> employees), to communicate with any person, firm or
> corporation, (including my employer), in respect of such debt.
> I FURTHER AUTHORIZE any holder of the Retail Installment
> Contract, the creditor, any attorney, debt collector or collection
> agency, (their agents or employees) to call my cellular
> telephone via manually dialing or utilizing automated
> telephone equipment . . . . I FURTHER AUTHORIZE any
> holder of the Retail Installment Contract, the creditor thereof,
> any attorney, debt collector or collection agency to

> communicate any and all information concerning this
> application or debt to any credit reporting agency or other
> creditor.

(Doc. 16-2).

Subsequent to Plaintiffs entering into the agreement with Prestigious,

Defendant placed a number of phone calls to the Plaintiffs.  (Doc. 15, p. 5); (Doc.

21, pp. 4-5).  Defendant did not call the same number more than once (1) per day

using the same phone number.  (Doc. 15, p. 5); (Doc. 21, p. 4).  However,

Defendant did call Plaintiffs more than once a day on different phone numbers,

and on back-to-back days.  (Doc. 15, p. 5); (Doc. 21, p. 5).  In total, Defendant

placed eighty-six (86) calls to five (5) phone numbers over the course of one

hundred and sixty-six (166) days.  (Id.).  In particular, on October 31, 2013;

November 7, 2013; November 13, 2013; December 12, 2013; January 6, 2014;

January 7, 2014; January 13, 2014; January 17, 2014; and January 18, 2014, when

Defendant called Plaintiffs' home telephone number, Plaintiffs answered and hung

up.  See (Doc. 21, pp. 9-10); (Doc. 24, p. 3).  On November 20, 2013, Plaintiffs

answered a call from Defendant on their cellular telephone and immediately hung

up.  (Doc. 21, p. 10); (Doc. 24, p. 3).  Defendant also made automated dialer calls

to Laura Baldwin's cellular telephone on the following dates: on December 9,

2013; January 7, 2014; January 8, 2014; January 9, 2014; January 31, 2014;

February 5, 2014; February 6, 2014; February 12, 2014; February 13, 2014;

February 21, 2014; February 28, 2014; March 5, 2014; March 6, 2014; March 12,

2014; March 13, 2014; March 20, 2014; March 26, 2014; and March 27, 2014.

(Doc. 21, p. 10); (Doc. 20-1, pp. 12-19); (Doc. 24, p. 3).  Each of the five (5)

telephone numbers called by Defendant were provided by Plaintiffs in the

agreement and/or credit application.  See (Doc. 15, p. 5); (Doc. 16-2, p. 2); (Doc.

21, p. 5).

On November 12, 2013, Defendant sent an e-mail to Richard Baldwin.

(Doc. 20-4, pp. 5-7).  Defendant stated in that e-mail, inter alia, that "[i]gnoring

our requests for payment will force us to declare the unpaid balance due

immediately and/or placement of your account with a collection agency."  (Id. at p.

6).  On November 20, 2013, Defendant left a voicemail with two (2) of Plaintiffs'

references.  (Doc. 15, p. 6); (Doc. 16-4); (Doc. 16-5); (Doc. 21, pp. 5-6).

Specifically, "Ashley . . . from offices of Monterey," left the voicemails with

Shawn Yorke and Donna Moyer.  (Id.); (Doc. 15-2, pp. 54-59).  The message left

with Shawn Yorke reads, in relevant part, that:

> This message is for Richard and Laura Baldwin.  This is
> Ashley calling from the review department of Monterey
> regarding WRCI.  I have left you several messages and gotten
> no returns.  And I do need you to make it a priority and return
> my call today to resolve this outstanding matter.  My toll-free

7

number with 24-hour voicemail is (877) 775-3080, direct
extension 1452.

(Doc. 15, p. 6);  (Doc. 15-2, pp. 54-57); (Doc. 16-5); (Doc. 21, pp. 5-6). The

message left with Donna Moyer reads, in relevant part, that:

> This message is for Richard and Laura Baldwin.  This is
> Ashley, calling from the offices of Monterey regarding WRCI.
> I've left several messages which none were returned, and I do
> need you to make it a priority and return my call today.  My
> phone number, toll-free, with 24-hour voice mail is (877) 775-
> 3080, direct extension 1452.

(Doc. 15, p. 6); (Doc. 15-2, p. 59); (Doc. 16-4); (Doc. 21, pp. 5-6).

On March 27, 2014, Plaintiffs' counsel sent a cease and desist letter to

Defendant.  (Doc. 15, p. 6); (Doc. 21, p. 6).  On March 31, 2014, Defendant

received the cease and desist letter, which was acknowledged by Defendant on

April 1, 2014, in its account notes.  (Id.).

While the above facts are not in dispute, the parties disagree on a number of

other points.  First, Plaintiffs argue they never provided their home or cellular

telephone numbers to Defendant.  (Doc. 21, p. 3)  Plaintiffs also assert that they

revoked consent to receive calls to their home and cellular telephones when they

notified Prestigious of their intention to cancel the contract in August 2013, told

Prestigious to destroy all the documents, refused to pay the alleged debt, retained

counsel to represent them, and hung-up the telephone after answering Defendant's

calls.  (Doc. 21, pp. 3, 5).  Finally, Plaintiffs claim that Defendant placed a call to Plaintiffs on April 1, 2014, a day after receiving Plaintiffs' March 27, 2014 letter. (Id. at p. 6).

## III.   **DISCUSSION**

### A.   TCPA Claim

Plaintiffs claim that Defendant violated the TCPA by making automated telephone calls to Plaintiffs' cellular telephone using 1) an automatic dialing system; and 2) a pre-recorded or artificial voice.  (Doc. 1-1, pp. 7-8).  Plaintiffs allege that these calls were not made for emergency purposes.  (Id. at p. 7). Further, they claim that Defendant's calls to Plaintiff "were not made with Plaintiffs prior express consent and/or were made after Plaintiffs' consent was revoked."  (Id. at p. 8).

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls."  Gager v. Dell Fin. Servs., LLC., 727 F.3d 265, 268 (3d Cir. 2013) (citing Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012)).  The relevant portion of the TCPA provides that it is unlawful for any person:

> to make any call (other than a call made for emergency
> purposes or made with the prior express consent of the called
> party) using any automatic telephone dialing system or an

9

> artificial or prerecorded voice . . . to any telephone number
> assigned to a paging service, cellular telephone service,
> specialized mobile radio service, or other radio common carrier
> service, or any service for which the called party is charged for
> the call.

47 U.S.C. § 227(b)(1)(A)(iii).

"Notably, the [TCPA] does not contain any language expressly granting consumers the right to revoke their prior express consent." Gager, 727 F.3d at 268. Nevertheless, the United States Court of Appeals for the Third Circuit has held that "the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems." Id. at 271-72; Gillard v. Receivables Performance Mgmt., LLC, 2015 U.S. Dist. LEXIS 70641, at *10 (E.D. Pa. June 1, 2015) (citing Gager, 727 F.3d at 272; Adamcik v. Credit Control Servs. Inc., 832 F. Supp. 2d 744, 751 (W.D. Tex. 2011)); see Leon v. Target Corp., 2015 U.S. Dist. LEXIS 77172, at *5 (M.D. Pa. 2015) (Caputo, J) ("Although Gager did not address whether prior express consent could be revoked orally, the Eleventh Circuit in Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255-56 (11th Cir. 2014), held that in the absence of any contractual restrictions to the contrary, consumers were free to orally revoke consent under the TCPA."). The United States District Court for the Eastern District of Pennsylvania has held that a consumer can revoke their prior express consent orally. Gillard, 2015 U.S.

Dist. LEXIS 70641, at *10 (citing Gager, 727 F.3d at 272; Adamcik, 832 F. Supp.

2d at 751).  Furthermore, "there is no temporal limitation on th[e] right" to revoke

consent to be contacted on cellular phones by autodialing systems.  Gager, 727

F.3d at 268.

     In reaching its decision to find that the TCPA allows consumers to revoke

their prior express consent, the Third Circuit noted that such a holding is

"consistent with the basic common law principle that consent is revocable."

Gager, 727 F.3d at 270.  The Third Circuit continued by stating that it determined

that "Congress did not intent to depart from the common law understanding of

consent because the statute does not treat the term differently from its common

law usage."  Id.  According to the Third Circuit, "at common law, consent may be

withdrawn."  Id. at 271 (citing Restatement (Second) of Torts § 892A, cmt. i

(1979); United States v. Greer, 607 F.3d 559, 564 (8th Cir. 2010); Desnick v. Am.

Broad Cos., Inc., 44 F.3d 1345, 1351 (7th Cir. 1995)).  Notably, the Third Circuit

also approvingly quoted the Restatement (Second) of Torts for the common law

principle that "'[c]onsent is terminated when the actor knows or has reason to

know that the other is no longer willing for him to continue the particular

conduct.'"  Id. (quoting Restatement (Second) of Torts § 892A, cmt. i).  Although

not quoted by the Third Circuit in Gager, the section of the Restatement (Second)

of Torts continues by stating that the "unwillingness" evidencing revocation of consent "may be manifested to the actor by any words or conduct inconsistent with continued consent." Adamcik, 832 F. Supp. 2d at 749 (quoting Restatement (Second) of Torts § 892A cmt. i).

Defendant argues that "[a]ccording to the plain language of the TCPA, the alleged conduct here would violate the TCPA, unless the autodialed call was 'made with the prior express consent of the called party . . . .'" (Doc. 17, p. 6) (citing 47 U.S.C. § 227(b)(1)(A)). Defendant claims that "it cannot be disputed that Plaintiffs provided their consent," and that "the evidence conclusively establishes that Plaintiffs did not revoke consent until [Defendant] received their counsel's letter on March 31, 2014, which was imputed into [Defendant's] system on April 1, 2014." (Id.).

According to Defendant, the "indisputable evidence demonstrates that Plaintiffs provided their cellular phone number when they executed the Contract." (Id. at p. 17). Defendant claims, "[i]n doing so, the FCC, together with the decisional authority summarized [in its brief], makes clear that Plaintiffs provided 'prior express consent' to be called on that number." (Id.). Defendant also claims that the first instance Plaintiffs revoked consent was in a letter dated March 27, 2014, which was received by Defendant on March 31, 2014. (Id.). Defendant

argues that it "did not make any autodialed calls to Plaintiffs (i.e. calls subject to the TCPA) after it received this letter on March 31, 2014 and in fact did not make any calls to Plaintiffs after April 1, 2014, the day in which the letter was inputted into [Defendant's] system." (Doc. 17, p. 17). Therefore, Defendant contends that Plaintiffs' TCPA claims must fail as a matter of law.

Plaintiffs respond by claiming that a genuine issue of material fact exists as to when Plaintiffs revoked consent for Defendant to call their cellular telephones. (Doc. 20, pp. 13-21). Plaintiffs appear to be arguing that a reasonable jury could determine that Plaintiffs revoked consent to call them on their cellular telephones on the following dates: August 25, 2013; August 26, 2013; August 30, 2013; September 9, 2013; September 11, 2013; September 17, 2013; and October 17, 2013. (Id. at pp. 16-21).

In its reply, Defendant claims that Plaintiffs have "offered no legal or factual argument" to rebut the contention that "the law is clear Plaintiffs provided consent to be called on their cellular telephone via autodialer when they entered into the Contract." (Doc. 23, p. 7). Defendant asserts that it has "demonstrated that consent was not revoked until [it] received the letter from Plaintiffs' counsel on March 31, 2014 and then promptly inputted into its system on April 1, 2014." (Id.). "Now," Defendant contends, "in opposing summary judgment, Plaintiffs

speculate and claim that a jury could find that they revoked consent for Defendant

to call their cellular telephone by October 18, 2013." (Doc. 23, p. 7) (citing Doc.

20, p. 16). According to Defendant, Plaintiffs offer "no specific proof of same."

(Id.). "Instead, Plaintiffs simply contend, for the first time, a series of events they

claim somehow equals revocation." (Id. at pp. 3-4). However, according to

Defendant, "[t]hese claims . . . are nothing more than conclusions." (Id. at p. 4).

Defendant points out that "[g]laringly absent from the Plaintiffs' opposition is an

affidavit of the Plaintiffs articulating when they alleged to revoke consent." (Id.).

"Moreover, and most importantly," Defendant argues, "all are entirely new claims

conjured up in an attempt to avoid summary judgment." (Id.) (citing Bell v. City

of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008)).

Further, Defendant does not dispute that the Plaintiffs revoked consent

when it "received and then processed" a letter sent to Defendant from Plaintiffs'

counsel on March 27, 2014, advising Defendant that "it was to cease and desist all

communications with Plaintiffs." (Id. at p. 9). However, Defendant contends that

it "did not make any calls, via autodialer or otherwise, to Plaintiffs after April 1,

2014." (Id.) (citing Doc. 16-3). As a result of the foregoing, Defendant concludes

that "Plaintiffs are unable to succeed on their TCPA claim." (Id.).

In their surreply, Plaintiffs argue that their opposition to Defendant's motion

for summary judgment concerning the TCPA claim is not an improper amendment of their complaint.  (Doc. 36, p. 3).  Rather, Plaintiffs contend that they "alleged in their complaint that they 'revoked consent to call their cellular telephone, when they cancelled their contract with Prestig[ious].'"  (Id.) (quoting Doc. 1-1, p. 8).  "In their Opposition to Defendant's Motion for Summary Judgment," Plaintiffs claim they "laid out facts regarding their efforts to cancel the contract and their telling Defendant and Prestig[ious], the creditor for whom Defendant was collecting, of their attempt to cancel and their belief that the contract should have been cancelled."  (Id.) (citing Doc. 20).

Defendant responded to Plaintiffs' surreply by claiming that "Plaintiffs, for the first time and in contradiction to their interrogatory responses, raised a series of actions (without any admissible proof) that they claim amounted to revocation of consent to be called on a mobile phone number."  (Doc. 37, pp. 3-4).  Defendant continues by stating that "the series of events offered by Plaintiffs do not amount to the requisite 'affirmative act to revoke any prior express consent.'"  (Id. at p. 4) (quoting Steinhoff v. Star Tribune Media Co., LLC, 2014 U.S. Dist. LEXIS 38293, at *11 (D. Minn. 2014); citing Patten v. Vertical Fitness Grp., LLC, 22 F. Supp. 3d 1069, 1075 (S.D. Cal. 2014); Schweitzer v. Comenity Bank, 2016 U.S. Dist. LEXIS 14619 (S.D. Fla. Jan. 28, 2016)).

15

As an initial matter, the Court must resolve the dispute as to whether Plaintiffs can, at this point in the proceedings, rely on the aforementioned arguments concerning its claimed revocation of consent to be contacted by Defendant.  "'[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion.'" Kocher v. Larksville Borough, 926 F. Supp. 2d 579, 604 (M.D. Pa. 2013) (Caputo, J.) (alteration in original) (quoting Desparois v. Perrysburg Exempted Vill. Sch. Dist., 455 F. App'x 659, 666 (6th Cir. 2012)).  "Federal pleading standards do not allow a party 'to raise new claims at the summary judgment stage . . . . Liberal pleading does not require that, at the summary judgment state, defendants must infer all possible claims that could arise out of the facts set forth in the complaint.'" DeWees v. Haste, 620 F. Supp. 2d 625, 635 n.7 (M.D. Pa. 2009) (Kane, J.) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004); citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Speziale v. Bethlehem Area Sch. Dist., 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003)).  Furthermore, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008).  "With reliance on Bell, district courts within the Third Circuit routinely reject such attempts." Diodato v.

16

Wells Fargo Ins. Servs., USA, 44 F. Supp. 3d 541, 557 (M.D. Pa. 2014) (Conner,

J.) (citing Ripple v. Olympic Steel, Inc., 2014 U.S. Dist. LEXIS 17528, at *5-6

(M.D. Pa. 2014) (Caldwell, J.); Thomas v. E. Orange Bd. of Educ., 998 F. Supp.

2d 338 (D.N.J. 2014); Duran v. Merline, 923 F. Supp. 2d 702, 723-24 (D.N.J.

2013); Doles v. City of Philadelphia Water Dep't, 2010 U.S. Dist. LEXIS 50686,

at *18 (E.D. Pa. 2010)).

In regards to Plaintiffs' claim that they revoked their consent to be

contacted, Plaintiffs allege in their complaint that they "dispute having ever

provided Defendant consent to call their cellular telephone number," "Defendant

never obtained Plaintiffs['] consent to call their cellular telephone," and "Plaintiffs

revoked consent to call their cellular telephone, when they cancelled their contract

with Prestig[ious]." (Doc. 1-1, p. 5). Further, Plaintiffs' allege that "Defendant's

calls to Plaintiff[s] were not made with Plaintiffs prior express consent and/or

made after Plaintiffs' consent was revoked." (Id. at p. 8). In opposition to

Defendant's summary judgment motion, as noted above, Plaintiffs contend there is

a genuine issue of material fact as to when they revoked consent for Defendant to

call them on their cellular telephone. (Doc. 20, p. 6). In support of this

contention, Plaintiffs point to a number of factual assertions concerning their

attempts to cancel to contract. See (Id. at pp. 9-14). It is determined that this

opposition to Defendant's motion for summary judgment does not present a novel claim or theory of Plaintiffs' case.  Rather, Plaintiffs' opposition concerning revocation is consistent with the theory put forth in their complaint.  Accordingly, Plaintiffs' arguments as to their claimed revocation of consent to be contacted by Defendant are properly before the Court and will be considered.

Turning to that particular issue, the Court finds that, based on the summary judgment record, there is a genuine issue of material fact as to when Plaintiffs revoked their consent for Defendant to call their cellular telephones.  In particular, a reasonable jury could find that Plaintiffs manifested that they no longer consented to be contacted on their cellular telephones as a result of any one of the following communications separately or taken together: on August 25, 2013, Plaintiffs sent email correspondence to Prestigious in an attempt to cancel the agreement, (Doc. 15, pp. 4-5); (Doc. 20-2) (Plaintiffs directed Prestigious to destroy "any documents that contain our personal and confidential information"); (Doc. 21, pp. 3-4); (Doc. 24, p. 1); on August 26, 2013, Plaintiffs mailed a letter to Prestigious in an attempt to cancel the agreement, (Doc. 15, p. 5); (Doc. 21, p. 4); on September 9, 2013, Richard Baldwin told Defendant that the account was cancelled, that Prestigious refused to cancel the contract, and that Defendant should contact his attorney, Richard Day, regarding the matter, (Doc. 21, p. 7)

(citing Doc. 20- 1, p. 2; Doc. 20-7); <u>see</u> (Doc. 15-2, p. 28) (Richard Baldwin told Defendant to "Talk to my attorney about this, okay."); on September 13, 2013, Richard Baldwin told Defendant his account with Prestigious had been cancelled, (Doc. 21, p. 7) (citing Doc. 20-1, p. 4); on September 17, 2013, Defendant spoke with Plaintiffs' attorney, Richard Day, who said that Plaintiffs sent a letter cancelling the contract, (<u>Id.</u>) (citing Doc. 20-1, pp. 4-5); on October 17, 2013, Defendant marked the account as, "Refusal to Pay," after discussing the matter with Richard Baldwin.  (<u>Id.</u> at p. 8) (citing Doc. 15-2, p. 41-42; Doc. 20-1, pp. 6-8); <u>see</u> (Doc. 15-2, pp. 40-41).  Further, on a number of occasions, Plaintiff immediately hung up after answering a telephone call placed by Defendant.  (Doc. 21, pp. 9-10).

Taking the facts as true and every inference in the light most favorable to the Plaintiffs, there is a genuine issue of material fact as to when Plaintiffs first manifested their desire for Defendant to cease contacting them or, said differently, revoked any prior express consent to be contacted by Defendant.  In particular, the Court cannot find that, as a matter of law, Defendant was without reason to know that Plaintiffs revoked their prior express consent to be contacted by Defendant on their cellular telephones prior to the initiation of the complained of calls from Defendant, which allegedly began in October 2013.  A reasonable jury could find

that the interactions discussed above, individually or collectively, could serve as

sufficient evidence to find that Plaintiffs revoked their express consent to be

contacted by Defendant on their cellular telephone.   Therefore, Defendant's

motion for summary judgment regarding Plaintiffs' TCPA claims will be denied.

B.     FCEUA Claims

Plaintiffs also allege that Defendant violated portions of the FCEUA.   (Doc.

1-1, pp. 8-9).   Specifically, Plaintiffs allege that Defendant violated the following

sections of the FCEUA: 2270.4(b)(1)(ii), (b)(2)(ii), (b)(4), (b)(4)(v), (b)(5),

(b)(5)(ii), (b)(5)(x), and (b)(6)(i).   (Doc. 1-1, pp. 8-9).   Defendant seeks summary

judgment as to Plaintiffs' FCEUA claims.   See (Docs. 14, 15).   The merits of

Defendant's motion as to these claims will be addressed in turn.

1.     73 P.S. § 2270.4(b)(1)(ii)

Plaintiffs allege that Defendant "violated 73 P.S. § 2270.4(b)(1)(ii) by

communicating with any person other than the consumer and stating that such

consumer owes a debt." (Doc. 1-1, p. 8).   Specifically, Plaintiffs claim that "in

November 2013, Defendant called Plaintiffs' two friends and left messages on

their answering machine stating that it was calling for 'Richard and Laura

Baldwin,' that it was trying to contact them 'in regards to a debt,' and to please

return as it was 'urgent.'" (Id. at p. 5).

20

Defendant asserts that "Plaintiffs identified these individuals as Donna Moyer and Shawn Yorke and provided the phone numbers [Defendant] allegedly contacted them on." (Doc. 17, p. 18). Defendant asserts that it attempted to contact Moyer and Yorke on November 20, 2013, but it "did not speak with the individual and simply left a voicemail." (Id.). According to Defendant, "[i]mportantly, however, in neither case did [Defendant] state or even infer that Plaintiffs owed a debt." (Id.). "Instead," Defendant claims, it "simply left messages requesting a return phone call and provided a toll free number." (Id.). Therefore, Defendant argues, Plaintiffs' allegation that Defendant violated 73 P.S. § 2270.4(b)(1)(ii) "fails and summary judgment is proper." (Id.).

Plaintiffs argue that a genuine issue of material fact exists as to its claim under section 2270.4(b)(1)(ii) of the FCEUA. (Doc. 20, pp. 22-23). In support, Plaintiffs state that "Defendant called Shawn York[e], a third party, and left a message stating, in part, 'I have left you several messages and have gotten no returns. And I do need you to make it a priority and return my call today to **resolve this outstanding matter**.'" (Id. at p. 22) (emphasis in original and citations omitted). Plaintiffs also claim that "Defendant contacted Donna Moyer, a third party, and left a message stating, 'I've left several messages which were not returned, and I do need you to make it a priority and return my call today.'" (Id.).

21

Plaintiffs continue by claiming that "[i]n both messages, Defendant identified itself as calling 'from the office of Monterey regarding WRCI.'" (Doc. 20, p. 22) (citation omitted).  According to Plaintiffs, contrary to the Defendant's characterization of these calls, "[t]he messages, however, clearly state that Defendant is calling from a business office, working on behalf of another company; that it left messages without getting a response; and that the matter is important."  (Id.).  Plaintiffs argue that "a person receiving these messages would understand that [Defendant] was calling about a debt."  (Id.).

Defendant replies to Plaintiffs' brief in opposition by arguing that "Plaintiffs do not offer any admissible evidence and instead make the conclusory statement that '[l]ogically, a person receiving these messages would understand that [Defendant] was calling about a debt.'" (Doc. 23, p. 12) (alteration in original).  According to Defendant, "[t]his claim, however, made without any evidence or support requires the Court to speculate as to the state of mind of third parties."  (Id.).  "Accordingly, Plaintiffs' unsupported claims are not sufficient to raise a triable issue of fact."  (Id.).

Pursuant to section 2270.4(b)(1) of the FCEUA:

> [w]ith respect to debt collection activities of creditors in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice . . . if . . . [a]ny creditor

22

communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall: (i) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested identify his employer; (ii) not state that such consumer owes any debt; (iii) not communicate with any such person more than once unless requested to do so by such person or unless the creditor reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information; (iv) not communicate by postcard; (v) not use any language or symbol on any envelope or in the contents of any communication effects by the mails or telegram that indicates that the communication relates to the collection of a debt; and (vi) after the creditor knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of or can readily ascertain such attorney's name and address, not communicate with any person other than that attorney unless the attorney fails to respond within a reasonable period of time to communication from the creditor.

73 P.S. § 2270.4(b)(1).  A "communication" is defined in the FCUEA as "[t]he conveying of information regarding a debt directly or indirectly to any person through any medium."  73 P.S. § 2270.3.  "Location information" is defined as "[a] consumer's place of abode and his telephone number at such place or his place of employment."  Id.  Also, a "consumer" is defined as:

[a] natural person residing in this Commonwealth who owes or is alleged to owe a debt or one who has incurred or is alleged to have incurred liability for the debt within this Commonwealth, including, but not limited to, a comaker, guarantor, surety, or parent if the consumer is under 18 years of age.  The term includes the consumer's guardian, executor or administrator.

23

73 P.S. § 2270.3.

Here, the parties do not dispute that non-consumer third parties, Yorke and Moyer, respectively received a communication from Defendant.  See (Doc. 15, p. 6); (Doc. 20, pp. 21-23); (Doc. 21, p. 5); (Doc. 23, p. 7).  Rather, the only portion of section 2270.4(b)(1) at issue is whether Defendant's respective communication with Yorke and Moyer stated that Plaintiff owed a debt.  (Id.).  In particular, Defendant argues that it is entitled to summary judgment on this claim because the respective voicemails it left for Yorke and Moyer did not state or imply that Plaintiffs owed a debt.  (Doc. 17, p. 14).  Plaintiffs contend that summary judgment should be denied because "a person receiving these messages would understand that Monterey was calling about a debt."  (Doc. 20, p. 15).

The message left by Defendant with Shawn Yorke reads, in relevant part, that:

> This message is for Richard and Laura Baldwin.  This is Ashley calling from the review department of Monterey regarding WRCI.  I have left you several messages and gotten no returns.  And I do need you to make it a priority and return my call today to resolve this outstanding matter.  My toll-free number with 24-hour voicemail is (877) 775-3080, direct extension 1452.

(Doc. 15, p. 6); (Doc. 15-2, pp. 54-57); (Doc. 16-5); (Doc. 21, pp. 5-6). The

24

message left by Defendant with Donna Moyer reads, in relevant part, that:

> This message is for Richard and Laura Baldwin.  This is
> Ashley, calling from the offices of Monterey regarding WRCI.
> I've left several messages which none were returned, and I do
> need you to make it a priority and return my call today.  My
> phone number, toll-free, with 24-hour voice mail is (877) 775-
> 3080, direct extension 1452.

(Doc. 15, p. 6); (Doc. 15-2, p. 59); (Doc. 16-4); (Doc. 21, pp. 5-6).  Based on these

communications, and drawing every inference in light most favorable to the non-

moving party, it is determined that Defendant's motion will be denied as to its

communication with Yorke, but granted as to its communication with Moyer.

Starting with Yorke, while Defendant did not expressly state that Plaintiffs

owed a debt, the Court cannot say as a matter of law that Defendant's

communication with Yorke fails to establish that Defendant stated that Plaintiffs

owed a debt.  In particular, the record establishes that Defendant's representative

from the "review department" left a message with Yorke for the Plaintiffs to return

a call and "to resolve this outstanding matter . . . ."  (Doc. 15, p. 6); (Doc. 15-2, pp.

54-57); (Doc. 16-5); (Doc. 21, pp. 5-6).  It is determined that a reasonable jury

could conclude that the message Defendant left with Yorke could constitute

statement that Plaintiffs owed a debt.

While Defendant's communication with Yorke establishes that there is a

sufficient evidentiary basis for a reasonable jury to find that Defendant stated that

Plaintiffs owed a debt, Defendant's communication with Moyer fails to meet that

requirement.  Unlike the message left with Yorke, Defendant's representative did

not state or even imply that Plaintiff owed a debt.  See (Doc. 15, p. 6); (Doc. 15-2,

pp. 59); (Doc. 16-4); (Doc. 21, pp. 5-6).  Thus, no reasonable jury could determine

that the message left by Defendant with Moyer violated section 2270.4(b)(1)(ii).

Thus, that portion of Defendant's motion for summary judgment will be granted.

Based on the foregoing, a genuine issue of material fact exists as to whether

Defendant's communication with Yorke constitutes a statement that Plaintiffs

owed a debt.  However, Defendant's communication with Moyer fails to create

such a genuine issue of material fact.  Therefore, Defendant's motion for summary

judgment will be denied in part and granted in part as to Plaintiffs' section

2270.4(b)(1)(ii) claims.

2.       73 P.S. § 2270.4(b)(2)(ii)

Plaintiffs also claim that Defendant "violated 73 P.S. § 2270.4(b)(2)(ii) by

communicating with Plaintiffs knowing that they were represented by an

attorney."  (Doc. 1-1, p. 8).  In particular, Plaintiffs allege that "[o]n March 27,

2014," Plaintiffs' attorney "sent written correspondence to Defendant advising

that his firm represented Plaintiffs and to cease all communications with

26

Plaintiffs." (Doc. 1-1, p. 7).  Defendant allegedly "received the letter of

representation on March 31, 2014, at 9:45 a.m." (Id.).  Plaintiffs claim that

"[d]espite knowing that Plaintiffs were represented by counsel and that they did

not want to be contacted, on April 1, 2014, at 3:21p.m., Defendant called

Plaintiffs' home telephone, and at 4:04 p.m., Defendant called Plaintiffs' cellular

telephone." (Id.).

Defendant argues that it is entitled to summary judgment on this claim

because "all collection efforts by [Defendant] ceased after the letter was reviewed

and entered into [Defendant's] system." (Doc. 17, p. 19).  In support, Defendant

states that "upon receipt of correspondence from an attorney, [Defendant] updates

its system to ensure that [Defendant] does not contact a represented party." (Id.).

Defendant claims that when it received a letter from Plaintiffs' counsel on March

31, 2014, it "promptly on April 1, 2014 processed the letter and updated its system

to ensure collection efforts cease . . . ." (Id.).  According to Defendant, "the

evidence clearly demonstrates that [Defendant] did not ever contact Plaintiffs

while 'knowing that they were represented by an attorney.'" (Id. at pp. 19-20).

Plaintiffs counter by arguing that a genuine issue of material facts exists as

to this claim.  (Doc. 20, p. 23).  According to Plaintiffs, "on March 27, 2014,

[Plaintiffs' attorney] sent written correspondence to Defendant advising of its

representation of Plaintiffs." (Doc. 20, p. 23). Plaintiffs claim that while

Defendant received the letter of representation on March 31, 2014, it contacted the

Plaintiffs at 1:03 P.M. on April 1, 2014. (Id.). According to the Plaintiffs, the

FCEUA "is a strict liability statute." (Id.). As a result, Plaintiffs contend,

"Defendant knew Plaintiffs were represented as soon as it received the letter," but

placed a call subsequent to its receipt of that notice. (Id.). Consequently,

Plaintiffs argue that a reasonable jury could conclude that Defendant violated

section § 2270.4(b)(2)(ii) of the FCEUA and thus, Defendant's motion should be

denied as to this claim. (Id. at pp. 23-24).

Defendant responds by claiming that "[a]s already made clear in their

moving papers, the testimony of Shaun Lucas makes clear that [Defendant] was

not aware that Plaintiff were represented by counsel when they placed the[] call to

Plaintiffs on April 1, 2014." (Doc. 23, p. 12). Defendant contends that

"[i]nsomuch as they did not know of this until the letter was processed that same

date, the call to Plaintiffs on April 1, 2014 cannot support a PAFCEUA claim."

(Id.). Defendant also takes issue with Plaintiffs' claim that "mere receipt of the

letter amounts to knowing Plaintiffs were represented." (Id.). "This claim,"

Defendant argues, is "unsupported by can [(sic)] case law, flies in the face of the

plain meaning of knowledge (i.e. actual awareness)." (Id.).

28

Under section 2270.4(b)(2)(ii) of the FCEUA,

> [w]ith respect to debt collection activities of creditors in this
> Commonwealth, it shall constitute an unfair or deceptive debt
> collection act or practice . . . if . . . [w]ithout the prior consent
> of the consumer given directly to the creditor or the express
> permission of a court of competent jurisdiction, a creditor may
> not communicate with a consumer in connection with the
> collection of any debt . . . if the creditor knows the consumer is
> represented by an attorney with respect to such debt and has
> knowledge of or can readily ascertain such attorney's name and
> address unless the attorney fails to respond within a reasonable
> period of time to a communication from the creditor or unless
> the attorney consents to direct communication with the
> consumer.

73 P.S. § 2270.4(b)(2)(ii).  Here, it is not disputed that on March 27, 2014,

Plaintiffs' counsel sent a cease and desist letter to Defendant.  (Doc. 15, p. 6);

(Doc. 21, p. 6).  Further, it is also undisputed that Defendant made a notation in

the account notes concerning Plaintiffs' account on April 1, 2014, indicting that it

received the March 27, 2014 letter, and that Defendant did not contact Plaintiffs

after making that notation.  (Id.).  What is disputed is when Defendant knew

Plaintiffs' were represented by counsel, and whether they knew of Plaintiffs'

representation  prior to placing two (2) calls on April 1, 2014.  See (Doc. 15, p. 6).

As noted, Plaintiffs are attempting to impose liability upon Defendant for its

constructive knowledge of the March 27, 2014 letter.  See (Doc. 20, pp. 16-17);

(Doc. 21, p. 6).  Specifically, Plaintiffs argue that "Defendant knew Plaintiffs were

29

represented as soon as it received the letter." (Doc. 20. p. 16). "Therefore,"

Plaintiffs conclude, "a reasonable jury could conclude Defendant violated the

[FCEUA]." (Id. at pp. 16-17).

However, as discussed in more detail below, constructive knowledge is

insufficient to satisfy section 2270.4(b)(2)(ii). First, a plain reading of the relevant

portion of section 2270.4(b)(2)(ii) appears to require the creditor to have actual

knowledge that the consumer is represented by an attorney with respect to the debt

at issue before liability attaches. See 73 P.S. § 2270.4(b)(2)(ii). While there is a

dearth of case law in Pennsylvania addressing the type of "knowledge" required to

succeed on a section 2270.4(b)(2)(ii) claim, federal courts have addressed that

issue in the context of a section 1692c(a)(2) claim under the Fair Debt Collection

Practices Act ("FDCPA"). Although a separate statute, section 2270.4(b)(2)(ii) of

the FCEUA, in all relevant respects here,[1] is identical to the language in section

_____

[1] For example, a difference in the language of these two (2) sections is that the FCEUA applies to "creditors," whereas the FDCPA applies to "debt collectors." See Humphreys v. Budget Rent a Car Sys., 2014 U.S. Dist. LEXIS 55438, at *40 (E.D. Pa. 2014) ("The FDCPA and FCEUA are analogous statutes which differ primarily in one respect: the FDCPA applies only to debt collectors, while the FCEUA applies to both debt collectors and creditors." In enacting the FCEUA, the Pennsylvania General Assembly expressly incorporated that a violation of the FDCPA would be a violation of the FCEUA for debt collectors; it adopted virtually identical language for creditors.") (citing 73 P.S. § 2270.4(a)); see also Magness v. Walled Lake Credit Bureau, 2013 U.S. Dist. LEXIS 47235, at *11 (E.D. Pa. 2013) ("While the FCEUA is identical to the FDCPA in most regards, unlike the FDCPA, the definition of 'debt' that the FCEUA covers does not include 'money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate.'") (quoting 73 P.S. § 2270.3).

1692c(a)(2) of the Fair Debt Collection Practices Act.  <u>Compare</u> 73 P.S. §

2270.4(b)(2)(ii) <u>with</u> 15 U.S.C. § 1692c(a)(2).  Moreover, section 2270.4(a) states

that "[i]t shall constitute an unfair or deceptive debt collection act or practice

under this act if a debt collector violates any of the provisions of the [FDCPA]."

Thus, the Court finds that the decisions interpreting section 1692c(a)(2) of the

FDCPA instructive in interpreting section 2270.4(b)(2)(ii) of the FCEUA.  <u>See</u>

<u>Humphreys v. Budget Rent a Car Sys.</u>, 2014 U.S. Dist. LEXIS 55438, at *49 (E.D.

Pa. 2014) ("Because the language in the FCEUA is identical to the language in the

cited FDCPA claims, my analysis as to the validity of [the plaintiff's] claims under

the FCEUA.  Therefore, the plaintiff also fails to state a claim under the FCEUA

for the reasons explained above.").

In addressing the type of "knowledge" required to successfully bring a

cause of action under section 1692c(a)(2), federal courts have determined that

section 1692c(a)(2) requires that the debt collector have actual knowledge that the

consumer was represented by counsel before the communication(s) in question

occurred.  <u>Hubbard v. Nat'l Bond and Coll. Assocs., Inc.</u>, 126 B.R. 422, 427 (D.

Del. 1991) ("Section 1692c(a)(2) [of the FDCPA] requires 'actual knowledge' and

the plaintiff has not provided any facts that suggest the defendant actually knew

[the plaintiff] was represented by the UAW Legal Services Plan before the

collection letter was sent."), aff'd, 947 F.2d 935 (3d Cir. 1991); Sexton v. Bank of N.Y. Mellon, 2016 U.S. Dist. LEXIS 59026, at *9 (E.D. Ky. May 4, 2016); Maldonado v. Lyons, Doughty & Veldhuis, P.C., 2014 U.S. Dist. LEXIS 43232, at *7 (D.N.J. 2014) (citing Ortiz v. Malcolm S. Gerald & Assoc., 2012 U.S. Dist. LEXIS 69669 (D.N.J. 2012); Hubbard, 126 B.R. at 426-27). As a result, it is determined that section 2270.4(b)(2)(ii) likewise requires that the creditor have actual knowledge that the consumer was represented by counsel before the communication(s) in question occurred.

Here, there is no genuine issue of material fact as to when Defendant obtained actual knowledge of Plaintiffs' March 27, 2014 letter. (Doc. 15, p. 6); (Doc. 21, p. 6). In particular, on April 1, 2014, Defendant made a notation in its account notes that it received the March 27, 2014 letter. (Id.). Further, it is undisputed that Defendants did not communicate with Plaintiffs after it made that notation concerning Plaintiffs' letter. (Id.); see (Doc. 16-3, pp. 21-23). Thus, since it is undisputed that Defendant did not communicate with the Plaintiffs' until after obtaining actual knowledge that Plaintiffs were being represented by an attorney, Defendant's motion for summary judgment as to Plaintiffs' section 2270.4(b)(2)(ii) claim will be granted.

3.      73 P.S. §§ 2270.4(b)(4) and 2270.4(b)(4)(v)

Plaintiffs allege that Defendant violated sections 2270.4(b)(4) and

2270.4(b)(4)(v) when it caused "Plaintiffs' telephone to ring repeatedly and

continuously, as well as calling Plaintiffs and hanging up when they answered,

with the intent to annoy, abuse and harass them."  (Doc. 1-1, p. 9).

Defendant argues that this claim should also fail because its conduct did

"not amount to harassment," nor does its conduct "demonstrate the requisite

actionable intent required by section 2270.4(b)(4)."  (Doc. 17, pp. 20-21).

Specifically, Defendant asserts that while it "did on occasion place multiple calls

per day," it "did not call the same number more than once per day."  (Id. at p. 20).

Defendant contends that it "would place a call to one number provided and if it

was not answered would try an alternative phone number."  (Id.).  Defendant also

claims that it "rarely called on back-to-back days."  (Id.).  Defendant asserts that

"while attempting to collect the debt owed by Plaintiffs, [Defendant] placed 86

calls over the course of 166 days to 5 different phone numbers. [footnote omitted]"

(Id.).  The phone numbers contacted, Defendant claims, were "provided by

Plaintiffs in the Contract and/or Credit Application."  (Id.).  Moreover, Defendant

contends that "there is simply no evidence that [it] called Plaintiffs and then hung

up on them."  (Id. at p. 21).  "To the contrary," Defendant contends, its "account

notes demonstrate that it was Plaintiffs that very often hung up on [Defendant] when [it] would call." (Doc. 17, p. 21). Thus, Defendant concludes, it is entitled to summary judgment as a result of a "lack of evidence supporting Plaintiffs' claims." (Id.).

Plaintiffs respond by claiming there is a genuine issue of material fact as to whether Defendant violated section 2270.4(b)(4) and 2270.4(b)(4)(v). (Doc. 20, p. 24). Specifically, according to Plaintiffs, "[v]iewing the evidence in light most favorable to Plaintiffs . . . , the evidence in the record is sufficient to create a genuine issue of material fact as to whether Defendant's calls were place[d] with the intent to annoy, abuse or harass." (Id.). In particular, Plaintiffs state that Defendant placed eighty-six (86) telephone calls to Plaintiffs over one hundred and sixty-six (166) days, which included "making multiple calls a day." (Id.). Plaintiffs further aver that "on numerous occasions, Plaintiffs answered Defendant's telephone calls and immediately hung up, signaling to Defendant that its calls were unwanted." (Id.). Therefore, Plaintiffs conclude, "[a] reasonable jury can . . . determine that the high call volume violates the" FCEUA. (Id.). Furthermore, Plaintiffs argue that a genuine issue of material fact exists on this claim because "Defendant[] continued to call [Plaintiffs] after they told Defendant that they disputed the debt." (Id.). Thus, Plaintiffs argue that, "[f]or either or both

of these reasons," summary judgment should be denied as to the claim under sections 2270.4(b)(4) and 2270.4(b)(4)(v) of the FCEUA.  (Doc. 20, pp. 25-26).

Defendant replies by arguing that "Plaintiffs fails [(sic)] to cite to any case law to support their claims, and once again rely on mere conclusions."  (Doc. 23, p. 13).  Further, Defendant asserts that "Plaintiffs did not even submit an affidavit even attempting to claim that they were somehow annoyed or harassed by" Defendant.  (Id.).  "In light of this," Defendant claims "summary judgment in favor of [Defendant] is appropriate."  (Id.).

Under section 2270.4(b)(4)(v), a creditor attempting to collect a debt violates the FCEUA by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number."  73 P.S. § 2270.4(b)(4)(v).

Here, the record establishes that Defendant placed eighty-six (86) telephone calls to Plaintiffs over one hundred and sixty-six (166) days.  (Doc. 21, p. 11); (Doc. 24, p. 3).  Therefore, at this juncture, the Court cannot say, as a matter of law, that the number of calls Defendant placed to Plaintiffs precludes a finding in Plaintiffs' favor at trial under section 2270.4(b)(4)(v) of the FCEUA.  Said differently, a reasonable jury could, under the current record, determine that Defendant violated section 2270.4(b)(4)(v) by placing eighty-six (86) telephone

calls over one hundred and sixty-six days (166).  Consequently, there is a genuine

issue of material fact as to whether Defendant violated section 2270.4(b)(4)(v) and

thus, Defendant's motion for summary judgment as to this claim will be denied.

4.    73 P.S. §§ 2270.4(b)(5), 2270.4(b)(5)(ii), and 2270.4(b)(5)(x)

Plaintiffs also claim that Defendant violated 73 P.S. §§ 2270.4(b)(5),

2270.4(b)(5)(ii), and 2270.4(b)(5)(x) "as it attempted to collect an amount not

owed by Plaintiffs and made false statements in their communications with

Plaintiffs." (Doc. 1-1, p. 9).  Under section 2270.4(b)(5)(ii), a creditor attempting

to collect a debt from a consumer violates the FCEUA if it falsely represents "the

character, amount or legal status of any debt." 73 P.S. § 2270.4(b)(5)(ii).

Additionally, a creditor attempting to collect a debt from a consumer violates

section 2270.4(b)(5)(x) of the FCEUA if it uses "any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information

concerning a consumer." 73 P.S. § 2270.4(b)(5)(x).

Defendant argues that it is entitled to summary judgment on the claim under

section 2270.4(b)(5)(ii) because it "has absolutely no basis." (Doc. 17, p. 22).

Defendant claims that "the Contract clearly establishes that Plaintiffs owed a

financial obligation to Prestig[ious]." (Id.).  According to Defendant, Plaintiffs

failed to cancel their contract within the time period established by the terms of

that contract.  (Doc. 17, pp. 22-23).  "As such," Defendant argues, "the Contract

was and remains valid, as does the underlying debt related to same."  (Id. at p. 23).

Defendant also claims that there is no evidence in the record that it "made any

false statements in attempting to collect the debt owed."  (Id.).  Accordingly,

Defendant states that it is entitled to summary judgment as to Plaintiffs' claims

under 73 P.S. §§ 2270.4(b)(5), 2270.4(b)(5)(ii), and 2270.4(b)(5)(x).

Plaintiffs respond by arguing that "there is evidence showing Defendant

violated this provision by making misleading or false statements."  (Doc. 20, p.

26).  According to Plaintiffs, Defendant sent an email on November 12, 2013,

which Plaintiffs' claims stated that "'[i]gnoring our requests for payment will

force use to declare the unpaid balance due immediately and/or place your account

with a collection agency.'"  (Id.).  Plaintiffs contend that "[n]ot only did

[Defendant] not intend to take such action, [it] was both the servicer and collection

agency for Prestig[ious]; thus, its statement to Plaintiffs was false."  (Id.).

Defendant argues in its reply that "Plaintiffs offer no argument in response

to the portion of [Defendant's] motion seeking to dismiss Plaintiffs' claims that

[Defendant] violated" sections 2270.4(b)(5) and 2270.4(b)(5)(ii).  (Doc. 23, p. 13).

As a result, Defendant argues that summary judgment "must be granted."  (Id.).

As for Plaintiffs' arguments regarding its section 2270.4(b)(5)(x) claim,

Defendant replies by claiming that "Plaintiffs do not point to any admissible evidence to support their claim that" the alleged false statement "is false and instead jump to the conclusion that [Defendant] did not intend to take such an action and that because [Defendant] was both a servicer and collection agency for Prestig[ious] was false."  (Doc. 23, p. 14).  "First," Defendant argues, "Plaintiffs are unable to offer any proof of what [Defendant] did or did not intend to do." (Id.).  "Second, as Shaun Lucas testified at his deposition, [Defendant] has multiple departments (loan servicing and collections being two)."  (Id.) (citing Doc. 15-2).  Defendant states that a debt "may initially be placed in servicing," but "'bad debts' are ultimately placed in collections–an entirely different department." (Id.).  "Accordingly," Defendant argues its "statements were neither false nor misleading.  Instead they were entirely accurate and reflect the nature of [Defendant's] operations."  (Id.).  As a result, Defendant claims that Plaintiffs' section 2270.4(b)(5), 2270.4(b)(5)(ii), and 2270.4(b)(5)(x) claims fail.  (Id.).

Based on the summary judgment record, Defendant has sufficiently established an absence of a genuine dispute of material fact as to Plaintiffs' claims under section 2270.4(b)(5).  Thus, it became Plaintiffs' burden to "set forth facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.

As to Plaintiffs' section 2270.4(b)(5)(ii) claim, the Court agrees with

Defendant to the extent it contends that Plaintiffs did not refute Defendant's arguments directed at that claim.  See (Doc. 20, p. 19).  Therefore, viewing the record and drawing every inference in Plaintiffs' favor, it is determined that Plaintiffs have failed to satisfy their burden to create a genuine issue of material fact as to the claims under section 2270.4(b)(5)(ii) and thus, summary judgment will be granted on that claim.[2]

In regards to Plaintiffs' claim under section 2270.4(b)(5)(x), which rests on Defendant's November 12, 2013 e-mail to Richard Baldwin that states, inter alia, "'[i]gnoring our requests for payment will force us to declare the unpaid balance due immediately and/or place your account with a collection agency.'"  (Doc. 20, p. 19); see (Doc. 20-4, p. 6).  As noted, Plaintiffs allege that Defendant "did not intend to take such action" because "Defendant was both the servicer and collection agency for Prestig[ious];" and thus, "its statement to Plaintiffs was false."  (Id.).  However, the summary judgment record is devoid of any evidence supporting the claim that Defendant did not intend to declare the unpaid balance due immediately and/or place Plaintiffs' account with Defendant's collection

---

[2]  Additionally, since Plaintiffs did not respond to the portion of Defendant's motion seeking summary judgment as to Plaintiffs' section 2270.4(b)(5), (ii) claims, those claims could be deemed abandoned.  See Seals v. City of Lancaster, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) ("Plaintiff failed to address this portion of the defendant's motion for summary judgment in her response . . . [t]herefore, plaintiff's failure . . . constitutes abandonment of those claims."); see also Blakeman v. Freedom Rides, Inc., 2013 U.S. Dist. LEXIS 96075, at * 42-43 (D. Del. 2013).

agency.  Therefore, Defendant's motion for summary judgment as to Plaintiffs' claim under 2270.4(b)(5)(x) will be granted.

5.     73 P.S. §§ 2270.4(b)(6) and 2270.4(b)(6)(i)

Plaintiffs also allege that Defendant "violated 73 P.S. §§ 2270.4(b)(6) and 2270.4(b)(6)(i) as it attempted to collect an amount not authorized by the agreement creating the alleged debt and/or authorized by law, failing to update its records to restrict calls to Plaintiffs' home and cellular telephones, and by calling Plaintiffs' friends and neighbors about the alleged debt."  (Doc. 1-1, p. 9).

Defendant argues that it is entitled to summary judgment as to this claim because 1) "the evidence before the Court demonstrates that [Defendant] did update its records when it received a cease and desist letter from Plaintiffs' counsel;" 2) it "did not disclose any information regarding the debt to Ms. Moyer or Mr. Yorke and thus did not violate any provision of the [FCEUA];" and 3) "there is simply no evidence that the debt was not authorized by the Contract." (Doc. 17, p. 23).

Plaintiffs "claim that Defendant acted unfairly or unconscionably by failing to update its records to restrict all calls to Plaintiffs after they disputed the debt and refused to pay it as well as by contacted their friends, Shawn Yorke and Donna Moyer, regarding a debt alleged to be owed by Plaintiffs."  (Doc. 20, pp.

26-27).  Plaintiffs also argue that Defendant "sought to collect an amount not owed, as they sought to cancel the contract."  (Doc. 20,  p. 27).  Therefore, Plaintiffs claim, "there exists a material issue of fact as to whether Defendant has violated this section as a rational jury could find that all of these actions taken together are unfair or unconscionable."  (Id.).

Defendant argues in its reply that "[i]n making these broad and unsupported claims, Plaintiffs claim that there exists a material issue of fact as to whether [Defendant] violated" sections 2270.4(b)(6) and 2270.4(b)(6)(i).  (Doc. 23, p. 15). Defendant claims that "[t]his argument, like the rest of Plaintiffs' opposition, is nothing more than a conclusory statement that lacks any support in the record." (Id.).  Consequently, Defendant contends that "[i]nsomuch as Plaintiffs are unable to point to any admissible proof, [Defendant] is entitled to summary judgment." (Id. at p. 16).

Section 2270.4(b)(6) prohibits a creditor from using "unfair or unconscionable means to collect or attempt to collect any debt."  Section 2270.4(b)(6) contains a non-exhaustive list of conduct that constitutes "unfair or unconscionable means."  In addition, Plaintiffs specifically allege that Defendant violated section 2270.4(b)(6)(i), which states that a creditor attempting to collect a debt from a consumer violates section 2270.4(b)(6) if it collects "any amount,

including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 73 P.S. § 2270.4(b)(6)(i).

As to Plaintiffs' section 2270.4(b)(6)(i) claim, it is determined that Defendant has provided sufficient evidence to shift the burden onto Plaintiffs to show that there is a genuine issue of material fact regarding Plaintiffs section 2270.4(b)(6)(i) claim.  See (Doc. 17, p. 23).  As a result, it then became the Plaintiffs' burden to show that a genuine issue of material fact exists as to whether Defendant collected "any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 73 P.S. § 2270.4(b)(6)(i).

First, Plaintiffs have not established that there is a genuine issue of material fact that Defendant has collected any amount from Plaintiffs that was not authorized by the agreement.  Rather, the summary judgment record is devoid of any evidence that Defendant was able to successfully obtain any amount from Plaintiffs after they attempted to cancel the agreement.  See (Docs. 14-17, 20-21, 23-24).  Second, even if Plaintiffs had provided evidence of such collection, they have failed to create a genuine issue of material fact that the amount collected was not "expressly authorized by the agreement creating the debt or permitted by law."

42

73 P.S. § 2270.4(b)(6)(i).  Plaintiffs' argue that the debt was not authorized by law because "they sought to cancel the contract."  (Doc. 20, p. 20).  Plaintiffs do not argue that they have successfully cancelled the contract, nor have not provided any evidence that they successfully canceled the agreement creating the debt in question.  As a result, Plaintiffs have failed to satisfy their burden regarding their claim under section 2270.4(b)(6)(i) and thus, Defendant's motion for summary judgment on that claim will be granted.

However, Plaintiffs also claim that section 2270.4(b)(6) was violated when Defendant failed to update its records to restrict calls to Plaintiffs' home and cellular telephones and called Plaintiffs' friends and neighbors about the alleged debt.  (Doc. 1-1, p. 9).  As discussed above, there is a genuine issue of material fact concerning whether Plaintiffs effectively revoked their consent to be contacted by the Defendant and one (1) of Plaintiffs' section 2270.4(b)(1)(ii) claims, which is based on Defendant's communication with Shawn Yorke.  As a result, viewing the record and taking all inferences in the light most favorable to the Plaintiffs', a genuine issue of material fact exists as to whether Defendant's actions were unfair or unconscionable and thus, violated section 2270.4(b)(6) of the FCEUA.  As a result, Defendant's motion for summary judgment will be denied as to Plaintiffs' section 2270.4(b)(6) claim.

6.      Impact of the Pennsylvania Unfair Trade Practices and
         Consumer Protection Law, 73 Pa. Const. Stat. §§ 201-1 to 201-
         9.3 ("UTPCPL"), on Plaintiffs' FCEUA Claims

"The FCEUA, Pennsylvania's analogue to the FDCPA, prohibits 'unfair

methods of competition and unfair or deceptive acts or practices with regards to

the collection of debts.'"  Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d

Cir. 2015) (quoting 73 P.S. § 2270.2).  "The text of the FCEUA's enforcement

provision reads: '[i]f a debt collector or creditor engages in an unfair or deceptive

debt collection act or practice under this act, it shall constitute a violation of the

[UTPCPL].'"  Id. (second alteration in original) (quoting 73 P.S. § 2270.5(a)).

Thus, the FCEUA "does not provide its own private cause of action; rather, it is

enforced through the remedial provision of the UTPCPL."  Id.; see Walkup v.

Santander Bank, N.A., 2015 U.S. Dist. LEXIS 162060, at *15 (E.D. Pa. 2015)

("'Since the FCEUA does not provide individuals with the right to institute private

causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201-

9.2, the remedial provision of the UTPCPL, to obtain relief.'") (quoting Benner v.

Bank of Am., N.A., 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013)).  According to the

United States Court of Appeals for the Third Circuit, the Pennsylvania:

> Superior Court construing the statute recently concluded that
> "[t]he inclusion of a violation of the FCEUA as also being a
> violation of the UTPCPL [] evinces a clear intent by our

> legislature that FCEUA claims be treated in the same manner as
> other private action claims under the UTPCPL . . . . [FCEUA]
> claims therefore must plead that a plaintiff suffered an
> ascertainable loss as a result of a defendant's prohibited
> action."

Kaymark, 783 F.3d at 182 (quoting Kern v. Lehigh Valley Hosp., Inc., 108 A.3d

1281, 1290 (Pa. Super. Ct. 2015); citing Benner v. Bank of Am., N.A., 917 F.

Supp. 2d 338, 360 (E.D. Pa. 2013)); Walkup, 2015 U.S. Dist. LEXIS 162060, at

*15 ("The Pennsylvania Supreme Court has found that the UTPCPL 'clearly

requires, in a private action, that a plaintiff suffer an ascertainable loss as a result

of the defendant's prohibited action.'") (quoting Weinberg v. Sun Co., Inc., 565

Pa. 612 (2001)).  Therefore, the Third Circuit has found, "[i]f the FCEUA can only

be enforced to the extent the UTPCPL's private remedy is invoked, then it follows

that [the plaintiff] cannot state a claim for relief under the FCEUA if he cannot

state a claim for relief under the UTPCPL."  Walkup, 2015 U.S. Dist. LEXIS

162060, at *15.

　　　"To maintain a private right of action under the UTPCPL, a plaintiff must

demonstrate (1) 'ascertainable loss of money or property, real or personal,' that

occurs (2) 'as a result of' the defendant's conduct prohibited under the UTPCPL."

Jarzyna v. Home Props., L.P., 2016 U.S. Dist. LEXIS 60863, at *33 (E.D. Pa. May

6, 2016) (quoting Kaymark, 783 F.3d at 180).  "Furthermore, a plaintiff's loss-

causing reliance of the prohibited conduct must be justifiable for such conduct to give rise to a UTPCPL claim." Walkup, 2015 U.S. Dist. LEXIS 162060, at *15 (citing Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479 (2004)).

Initially, the Court notes that in the filings related to the instant motion, the parties do not address the potential impact, if any, of Plaintiffs' FCEUA allegations being viewed through the lens of the UTPCPL. See (Doc. 17, pp. 13-19); (Doc. 20, pp. 14-20). Moreover, upon review of the complaint, the only express reference to the UTPCPL is found in Plaintiffs' prayer for relief. See (Doc. 1-1). More importantly, the summary judgment record also appears to be devoid of any meaningful evidence concerning the viability of Plaintiffs' FCEUA claims when assessed under the UTPCPL. Specifically, the summary judgment record does not appear to contain any evidence of Plaintiffs' ascertainable loss, if any, that occurred as a result of a defendant's prohibited action under the FCEUA. See (Docs. 15, 21, 24). Therefore, analyzing Plaintiffs' FCEUA claims through the lens of the UTPCPL in the context of the current summary judgment record could be dispositve as to those claims.

"The Court has a duty to facilitate the just, speedy and inexpensive determination of this action." Slaughter v. Cnty. of Allegheny, 2013 U.S. Dist. LEXIS 32848 (W.D. Pa. Mar. 11, 2013) (citing FED. R. CIV. P. 1). Pursuant to

Federal Rule of Civil Procedure 56(f), a court may, after giving notice and a reasonable time to respond, grant a motion for summary judgment on grounds not raised by the moving party or "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." See FED. R. CIV. P. 56(f)(2)-(3).  As outlined above, the Court has concerns about the viability of Plaintiffs' FCEUA claims as they are currently constituted.  As a result of these concerns, the Court will exercise the discretion set forth in Federal Rule of Civil Procedure 56(f)(3).  Specifically, in accordance with Rule 56(f)(3), the Court hereby gives notice to Plaintiffs that the Court is considering summary judgment in favor of Defendant on the ground that there appears to be a lack of sufficient evidence in the current summary judgment record establishing that Plaintiffs suffered ascertainable loss as a result of the remaining FCEUA claims.  As a result, the Court will provide the parties with an opportunity respond to the potentially dispositive issues concerning Plaintiffs' remaining FCEUA claims.  Plaintiff will have until October 31, 2016, to submit evidence to the Court on these issues to show why the Court should not rule that there is a lack of a genuine issue of material fact that Plaintiffs' did not suffer an ascertainable loss as a result of the remaining FCEUA claims.  While these concerns apply to each of Plaintiffs' FCEUA claims, Plaintiffs need only address those remaining FCEUA claims.

C.     State Law Tort Claim of Intrusion Upon Seclusion

Plaintiffs also claim that Defendant committed the tort of intrusion upon seclusion.  (Doc. 1-1, pp. 9-10).  "Intrusion upon seclusion is a tort under Pennsylvania law, derived from § 652B of the Restatement (Second) of Torts." Cable v. Allied Interstate, Inc., 2012 U.S. Dist. LEXIS 169344, at *7 (M.D. Pa. 2012) (Caldwell, J.); see Hambruger v. Northland Grp., Inc., 2015 U.S. Dist. LEXIS 17461, at *24 (M.D. Pa. 2015) (Mariani, J.) (quoting Desmond v. Phillips & Cohen Assocs., Ltd., 724 F. Supp. 2d 562, 568 (W.D. Pa. 2010)) ("'Pennsylvania has adopted the definition for intrusion upon seclusion invasion of privacy as set forth by the Restatement (Second) of Torts, § 652B'"); Tagouma v. Investigative Consultant Servs., Inc., 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (citing Restatement (Second) of Torts § 652B).  "The Restatement definition holds that '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person.'" Hamburger, 2015 U.S. Dist. LEXIS 17461, at *24-25 (quoting Larsen v. Philadelphia Newspapers, Inc., 375 Pa. Super. 66 (Pa. Super. Ct. 1988)).

Defendant argues that Plaintiffs' intrusion upon seclusion claim fails

because it "was not only reasonable, but [it] did not in any way violate the TCPA or the [FCEUA]." (Doc. 17, p. 24). First, Defendant states that this claim should fail because the allegations upon which it relies "fail on their own . . . ." (Id.). Second, Defendant claims that "even if Plaintiffs defeat summary judgment on its first two causes of action, [TCPA and FCEUA], Plaintiffs' third cause of action for intrusion upon seclusion must fail, as Plaintiffs allegations, even if true, do not rise to the level required to succeed on an invasion of privacy claim." (Id.). Specifically, Defendant argues, "[t]here is simply no evidence of the highly offensive conduct required to sustain a cause of action for intrusion upon seclusion." (Id.) (citing Stuart v. AR Res. Inc., 2011 U.S. Dist. LEXIS 27025, at *20-21 (E.D. Pa. Mar. 15, 2011)).

Plaintiffs argue that a genuine issue of material fact exists as to whether "Defendant's conduct is substantially and highly offense regarding Plaintiffs' claim for Intrusion Upon Seclusion." (Doc. 20, p. 27). According to Plaintiffs, they "cite more than just the number and frequency of phone calls to support their intrusion upon seclusion claim." (Id. at p. 29). Plaintiffs' state that "[t]hey also allege that Defendant sent them numerous emails, as well as the contents of Defendant's calls." (Id.). Based on those allegations, Plaintiffs claim, a genuine issue of material fact exists as to whether Defendant committed the tort of

intrusion upon seclusion and thus, its motion for summary judgment should be denied.  (Doc. 20, p. 27).

In its reply, Defendant argues that Plaintiffs' intrusion upon seclusion claim "is based on nothing more than purse [(sic)] speculation."  (Doc. 23, p. 16). Defendant continues by asserting that Plaintiffs' opposition to the instant motion "once again rests solely on their claims in their Complaint."  (Id.).  In particular, Defendant asserts that "[t]here is simply no affidavit or testimony from the Plaintiffs in support of their claim."  (Id.).  "Instead," Defendant argues that "Plaintiffs rely on a handful of cases–each of which is easily distinguishable." (Id.).

Defendant also takes issue with Plaintiffs' claim that "Defendant sent them numerous emails, as well as the contents of the Defendant's call."  (Id. at p. 18) (citing Doc. 20, p. 29).  "Once again," Defendant argues, "this statement is unsupported by any evidence and this is insufficient to defeat summary judgment and must be rejected."  (Id.).

In Hamberger v. Northland Group, Inc., 2015 U.S. Dist. LEXIS 17461, at *24-26, the United States District Court for the Middle District of Pennsylvania addressed, inter alia, the defendant's motion for summary judgment as to the plaintiffs' claim for intrusion upon seclusion.  There, the intrusion upon seclusion

claim was based on "approximately seven or eight calls over the course of several weeks . . . ." Hamberger, 2015 U.S. Dist. LEXIS 17461, at *25.  Although the court noted that "the jury could be skeptical that approximately seven or eight calls over the course of several weeks 'rises to the level of a substantial burden to [the plaintiffs'] existence,'" it was "unwilling to say as a matter of law that no reasonable factfinder could so conclude." Id.  The court continued by stating that "[t]he questions of whether the number and frequency of the calls and whether these calls were placed after the Defendant was instructed to stop calling the Plaintiffs rise to the level of an intrusion upon seclusion are all disputed issues of fact that can only be determined at trial." Id. at *25-26.  Finally, the court noted that it "is unwilling to resolve what are essentially factual disputes as a matter of law." Id. at *26.

Here, Defendant placed eighty-six (86) telephone calls to Plaintiffs over one hundred and sixty-six (166) days.  (Doc. 15, p. 5); (Doc. 21, pp. 5, 11).  Moreover, Defendant sent emails to Plaintiffs demanding payment on three (3) separate occasions.  (Doc. 20-4).  While a jury may be skeptical that Defendant's alleged actions rise to the level of a substantial burden to Plaintiffs' existence, the Court cannot say as a matter of law that no reasonable factfinder could reach such a conclusion. See Hamberger, 2015 U.S. Dist. LEXIS 17461, at *24-26.  Therefore,

there are genuine issues of material fact regarding Plaintiffs' intrusion upon seclusion claim that can only be determined at trial.  Therefore, Defendant's motion for summary judgment as to Plaintiffs' intrusion upon seclusion claim will be denied.

## IV.  <u>CONCLUSION</u>

As a result of the foregoing, Defendant's motion for summary judgment, (Doc. 14), will be granted in part and denied in part.  In particular, Defendant's motion will be denied as to Plaintiffs' TCPA and intrusion upon seclusion claims. In regards to the portion of Defendant's motion seeking summary judgment as to Plaintiffs' FCEUA claims, the Court will grant Defendant's motion as to Plaintiffs' following FCEUA claims: section 2270.4(b)(1)(ii) claim concerning Moyer; and claims under sections 2270.4(b)(5), (b)(5)(ii), (b)(5)(x), and (b)(6)(1). Defendant's motion will be denied as to Plaintiffs' following FCEUA claims: Plaintiffs' remaining claim under section 2270.4(b)(1)(ii); and claims under section 2270.4(b)(2)(ii), (b)(4), (b)(4)(v), and (b)(6).  However, as discussed above, exercising its discretion under Federal Rule of Civil Procedure 56(f), the Court is putting Plaintiffs on notice that it is considering <u>sua</u> <u>sponte</u> summary judgment in favor of the Defendant as to the remaining FCEUA claims.  As noted above, the Court has identified that Defendant may be entitled to summary

judgment as to the remaining FCEUA claims on grounds that have not been raised, specifically that it appears there is a lack of evidence in the current summary judgment record establishing a genuine issue of material fact that the UTPCPL can be satisfied.  Thus, pursuant to Federal Rule of Civil Procedure 56(f), the Court will allow the parties to file their respective responses to this determination concerning Plaintiffs' remaining FCEUA claims.

A separate Order will be issued.


**Date**: September 30, 2016                    /s/ William J. Nealon
                                                **United States District Judge**