# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD BALDWIN, ET AL., Plaintiffs | : : : | CIVIL ACTION NO. 3:14-CV-2346 |
| v. | : : : | (Judge Nealon) |
| MONTEREY FINANCIAL SERVICES, INC., Defendant | : : : : | |



FILED
SCRANTON

OCT 2 0 2017

PER _____
DEPUTY CLERK

## MEMORANDUM

On November 24, 2014, Plaintiffs, Richard and Laura Baldwin, filed a complaint in the Court of Common Pleas of Schuylkill County. (Doc. 1). Plaintiffs allege that they received a number of communications from Defendant, Monterey Financial Services, Inc., regarding the collection of a debt. (Doc. 1-1). Plaintiffs also claim that two (2) of their friends were contacted by Defendant regarding that debt. (Id.). As a result of these alleged communications, Plaintiffs claim that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"); the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, et seq. ("FCEUA"); and invaded Plaintiffs' privacy by intrusion upon seclusion. (Id. at pp. 10-13). On December 10, 2014, Defendant removed the matter to this Court. (Doc. 1).

On September 15, 2015, Defendant filed a motion for summary judgment, supporting brief, statement of material facts, and an affidavit in support. (Docs.

14, 15, 16). On October 26, 2015, Plaintiffs filed a brief in opposition and statement of material facts. (Docs. 20, 21). On November 11, 2015, Defendant filed a reply brief and statement of material facts. (Docs. 23, 24). On December 9, 2015, Plaintiffs filed a motion for leave to file a surreply and supporting brief, (Docs. 28, 29), which was opposed by Defendant. (Doc. 31). Plaintiffs' motion to file a surreply was granted, and Plaintiffs' surreply was filed. (Docs. 35, 36). Defendant then filed a reply to the surreply. (Doc. 37).

On September 30, 2016, the Court issued a Memorandum and Order which granted in part and denied in part Defendant's motion for summary judgment. (Docs. 38, 39). In particular, Defendant's motion for summary judgment was granted as to Plaintiffs' FCEUA claim under 73 P.S. § 2270.4(b)(1)(ii) concerning Defendant's communication with Donna Moyer, as well as Plaintiffs' FCEUA claims under section 2270.4(b)(5)(ii), (b)(5)(x), and (b)(6)(i). (Id.). Defendant's motion was denied as to Plaintiffs' claims under the TCPA; FCEUA claim under section 2270.4(b)(1)(ii) concerning Defendant's communication with Shawn Yorke; FCEUA claims under sections 2270.4(b)(2)(ii), (b)(4), (b)(4)(v), and (b)(6); and state law tort claim of invasion of privacy by intrusion upon seclusion.

2

(Id.).¹ As to those remaining FCEUA claims, the Court notified the parties that it was considering summary judgment in favor of Defendant due to the apparent lack of sufficient evidence in the summary judgment record establishing that Plaintiffs' remaining FCEUA claims can satisfy Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1 to 201-9.3 ("UTPCPL"). (Docs. 38, 39). Plaintiffs were directed to file their response to this notice on or before October 31, 2016. (Id.). To date, Plaintiffs have not filed any documents in response to the Court's September 30, 2016, Memorandum and Order. Thus, whether Defendant is entitled to summary judgment as to Plaintiffs' remaining FCEUA claims is question ripe for disposition. For the reasons stated below, summary judgment will be entered in favor of Defendant as to the remaining FCEUA claims.

---

¹ The Court notes that Defendant's motion for summary judgment concerning Plaintiffs' section 2270.4(b)(2)(ii) claim was granted. See (Doc. 38, pp. 26-32). However, the Court erroneously identified this claim as surviving Defendant's motion for summary judgment in Section IV of the Memorandum. (Doc. 38, p. 52). Similarly, the Court also erroneously denied Defendant's motion for summary judgment as to Plaintiffs' section 2270.4(b)(2)(ii) in the Order that accompanied the September 30, 2016 Memorandum. (Doc. 39). As a result, pursuant to Federal Rule of Civil Procedure 60(a), the Court will correct the record concerning the status of Plaintiffs' section 2270.4(b)(2)(ii) claim. Specifically, in the accompanying Order, the Court will amend its September 30, 2016 Memorandum and Order to correctly reflect that Defendant's motion for summary judgment concerning Plaintiffs' section 2270.4(b)(2)(ii) claim was granted. As a result, because that claim did not survive Defendant's summary judgment motion, it will not be subject to the discussion of this Memorandum.

## I. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "A dispute is 'genuine' only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is 'material' only if it might affect the outcome of the action under the governing law." Shank v. Experian Info. Solutions, Inc., 2016 U.S. Dist. LEXIS 2679, at *1 (M.D. Pa. Jan. 11, 2016) (Jones, J.) (citing Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). "[T]he non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial." Shank, 2016 U.S. Dist. LEXIS 2679, at *2 (citing Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d

4

762, 773 (3d Cir. 2013)). In particular, for a non-moving party to prevail on a motion for summary judgment, they "'must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.'" McGlynn v. Reliance Standard Life Ins. Co., 2015 U.S. Dist. LEXIS 168589, at *9-10 (M.D. Pa. 2015) (Caputo, J.) (quoting Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007)). "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli, 490 F.3d at 270 (quoting Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)).

All inferences "should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co., 24 F.3d 508, 512 (3d Cir. 1994) (quoting Big Apple BMW, Inc. v. BMW of North Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)). Moreover, when evaluating a motion for summary judgment, a court "should not evaluate credibility or weigh the evidence." Shank, 2016 U.S. Dist. LEXIS 2679, at *2 (citing Guidotti, 716 F.3d at 772).

Pursuant to Federal Rule of Civil Procedure 56(f)(3), "[a]fter giving notice

5

and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FED. R. CIV. P. 56(f)(3); see Celotex Corp., 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). As stated, the Court provided notice on September 30, 2016, that the Undersigned was considering entering summary judgment in Defendant's favor as to the remaining FCEUA claims pursuant to Federal Rule of Civil Procedure 56(f)(3) and gave Plaintiffs until October 31, 2016, to file a response to the Court's notice. (Doc. 39). Therefore, the Court has authority under Federal Rule of Civil Procedure 56(f)(3) to independently consider summary judgment at this stage concerning the remaining FCEUA claims. See FED. R. CIV. P. 56(f)(3).

## II. STATEMENT OF FACTS

On August 20, 2013, Plaintiffs entered into an agreement with Prestigious Software Ltd. ("Prestigious"). (Doc. 15, p. 3); (Doc. 21, p. 2). In executing the agreement with Prestigious, Plaintiffs provided a home telephone number and a cellular telephone number. (Id.). The agreement states that it could be canceled "without penalty or obligation" within three (3) days of its execution. (Doc. 15, p.

4); (Doc. 21, p. 3). The agreement reads, in relevant part, that:

> YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR OBLIGATION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD (3RD) BUSINESS DAY FROM YOUR EXECUTION OF THIS AGREEMENT, TO CANCEL THIS AGREEMENT, YOU MUST NOTIFY LICENSOR IN WRITING OF YOUR INTENT TO CANCEL. YOUR NOTICE OF CANCELLATION SHALL BE EFFECTIVE UPON THE DATE SENT AND SHALL BE SENT TO: PRESTIGIOUS SOFTWARE LTD, 3790 Paradise Road, Suite 210, Las Vegas, NV 89169.

(Id.). On August 25, 2013, Plaintiffs sent email correspondence to Prestigious in an attempt to cancel the agreement. (Doc. 15, pp. 4-5); (Doc. 21, pp. 3-4); (Doc. 24, p. 1). On August 26, 2013, Plaintiffs mailed a letter to Prestigious in an attempt to cancel the agreement. (Doc. 15, p. 5); (Doc. 21, p. 4).

As part of the agreement, Plaintiffs completed a credit application, wherein they each provided a cellular telephone and the names of three (3) references. (Doc. 15, pp. 3-4); (Doc. 21, pp. 2-3). Specifically, Plaintiffs provided the phone numbers of Donna Moyer and Shawn Yorke on the credit application. (Doc. 15, p. 4); (Doc. 21, p. 3). The credit application states, in relevant part, that:

> I HEREBY AUTHORIZE any holder thereof, the creditor, any attorney, debt collector or collection agency (their agents or employees), to communicate with any person, firm or corporation, (including my employer), in respect of such debt. I FURTHER AUTHORIZE any holder of the Retail Installment Contract, the creditor, any attorney, debt collector or collection

7

> agency, (their agents or employees) to call my cellular
> telephone via manually dialing or utilizing automated
> telephone equipment.... I FURTHER AUTHORIZE any
> holder of the Retail Installment Contract, the creditor thereof,
> any attorney, debt collector or collection agency to
> communicate any and all information concerning this
> application or debt to any credit reporting agency or other
> creditor.

(Doc. 16-2).

Subsequent to Plaintiffs entering into the agreement with Prestigious, Defendant placed a number of phone calls to the Plaintiffs. (Doc. 15, p. 5); (Doc. 21, pp. 4-5). Defendant did not call the same number more than once (1) per day using the same phone number. (Doc. 15, p. 5); (Doc. 21, p. 4). However, Defendant did call Plaintiffs more than once a day on different phone numbers, and on back-to-back days. (Doc. 15, p. 5); (Doc. 21, p. 5). In total, Defendant placed eighty-six (86) calls to five (5) phone numbers over the course of one hundred and sixty-six (166) days. (Id.). In particular, on October 31, 2013; November 7, 2013; November 13, 2013; December 12, 2013; January 6, 2014; January 7, 2014; January 13, 2014; January 17, 2014; and January 18, 2014, when Defendant called Plaintiffs' home telephone number, Plaintiffs answered and hung up. See (Doc. 21, pp. 9-10); (Doc. 24, p. 3). On November 20, 2013, Plaintiffs answered a call from Defendant on their cellular telephone and immediately hung

up. (Doc. 21, p. 10); (Doc. 24, p. 3). Defendant also made automated dialer calls to Laura Baldwin's cellular telephone on the following dates: on December 9, 2013; January 7, 2014; January 8, 2014; January 9, 2014; January 31, 2014; February 5, 2014; February 6, 2014; February 12, 2014; February 13, 2014; February 21, 2014; February 28, 2014; March 5, 2014; March 6, 2014; March 12, 2014; March 13, 2014; March 20, 2014; March 26, 2014; and March 27, 2014. (Doc. 21, p. 10); (Doc. 20-1, pp. 12-19); (Doc. 24, p. 3). Each of the five (5) telephone numbers called by Defendant were provided by Plaintiffs in the agreement and/or credit application. See (Doc. 15, p. 5); (Doc. 16-2, p. 2); (Doc. 21, p. 5).

On November 12, 2013, Defendant sent an e-mail to Richard Baldwin. (Doc. 20-4, pp. 5-7). Defendant stated in that e-mail, inter alia, that "[i]gnoring our requests for payment will force us to declare the unpaid balance due immediately and/or placement of your account with a collection agency." (Id. at p. 6). On November 20, 2013, Defendant left a voicemail with two (2) of Plaintiffs' references. (Doc. 15, p. 6); (Doc. 16-4); (Doc. 16-5); (Doc. 21, pp. 5-6). Specifically, "Ashley . . . from offices of Monterey," left the voicemails with Shawn Yorke and Donna Moyer. (Id.); see (Doc. 15-2, pp. 54-59). The message left with Shawn Yorke reads, in relevant part, that:

> This message is for Richard and Laura Baldwin. This is Ashley calling from the review department of Monterey regarding WRCI. I have left you several messages and gotten no returns. And I do need you to make it a priority and return my call today to resolve this outstanding matter. My toll-free number with 24-hour voicemail is (877) 775-3080, direct extension 1452.

(Doc. 15, p. 6); (Doc. 15-2, pp. 54-57); (Doc. 16-5); (Doc. 21, pp. 5-6).

On March 27, 2014, Plaintiffs' counsel sent a cease and desist letter to Defendant. (Doc. 15, p. 6); (Doc. 21, p. 6). On March 31, 2014, Defendant received the cease and desist letter, which was acknowledged by Defendant on April 1, 2014, in its account notes. (Doc. 15, p. 6); (Doc. 21, p. 6).

### III. DISCUSSION

"The FCEUA, Pennsylvania's analogue to the FDCPA, prohibits 'unfair methods of competition and unfair or deceptive acts or practices with regards to the collection of debts.'" Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015) (quoting 73 P.S. § 2270.2). "The text of the FCEUA's enforcement provision reads: '[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL].'" Id. (second alteration in original) (quoting 73 P.S. § 2270.5(a)). Thus, the FCEUA "does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL." Id.; see Walkup v.

Santander Bank, N.A., 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015) ("'Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201-9.2, the remedial provision of the UTPCPL, to obtain relief.'") (quoting Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013)). According to the United States Court of Appeals for the Third Circuit, the Pennsylvania Superior Court:

> construing the statute recently concluded that "[t]he inclusion of a violation of the FCEUA as also being a violation of the UTPCPL [] evinces a clear intent by our legislature that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL . . . . [FCEUA] claims therefore must plead that a plaintiff suffered an ascertainable loss as a result of a defendant's prohibited action."

Kaymark, 783 F.3d at 182 (quoting Kern v. Lehigh Valley Hosp., Inc., 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015); citing Benner, 917 F. Supp. 2d at 360); Walkup, 147 F. Supp. 3d at 358 ("The Pennsylvania Supreme Court has found that the UTPCPL 'clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action.'") (quoting Weinberg v. Sun Co., Inc., 565 Pa. 612 (2001)). Therefore, the Third Circuit has found, "[i]f the FCEUA can only be enforced to the extent the UTPCPL's private remedy is invoked, then it follows that [the plaintiff] cannot state a claim for relief under the FCEUA if he cannot state a claim for relief under the UTPCPL."

11

Kaymark, 783 F.3d at 182.

"To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) 'ascertainable loss of money or property, real or personal,' that occurs (2) 'as a result of' the defendant's conduct prohibited under the UTPCPL." Jarzyna v. Home Props., L.P., 2016 U.S. Dist. LEXIS 60863, at *33 (E.D. Pa. May 6, 2016) (quoting Kaymark, 783 F.3d at 180). "Because the Pennsylvania Supreme Court has not definitively addressed what constitutes ascertainable loss under the statute, 'we must predict how that court would rule if faced with the issue,' and, in doing so, '[t]he decision of an intermediate state court is particularly relevant.'" Kaymark, 783 F.3d at 180 (alteration in original) (quoting Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004)). "Lower state courts reason that '[a]scertainable loss must be established from the factual circumstances surrounding each case,' but that the loss must be non-speculative." Id. (alteration in original) (internal citations omitted). Said differently, Plaintiff "must have suffered harm as a result of the defendant's wrongful conduct, meaning he must be able to show an actual loss of money or property." Jarzyna, 2016 U.S. Dist. LEXIS 60863, at *33 (citing Kaymark, 783 F.3d at 180). According to the Third Circuit, "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but

deals with the more basic question of whether there are identifiable damages." Kaymark, 783 F.3d at 181 (quoting Pashak v. Barish, 450 A.2d 67, 69 (Pa. Super. Ct. 1982)). Additionally, "a plaintiff must have 'suffered harm' as a result of the defendant's wrongful conduct." Id. at 180 (citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004)). "Furthermore, a plaintiff's loss-causing reliance of the prohibited conduct must be justifiable for such conduct to give rise to a UTPCPL claim." Walkup, 147 F. Supp. 3d at 358 (citing Yocca, 854 A.2d 425).

As noted above, on September 30, 2016, the Court notified the parties that the entry of summary judgment in favor of Defendant was under consideration pursuant to Federal Rule of Civil Procedure 56(f)(3) as to Plaintiffs' remaining FCEUA claims if Plaintiffs failed to file supportive documentation. See (Docs. 38, 39). Specifically, the Court determined that the summary judgment record did not demonstrate that Plaintiffs suffered an "ascertainable loss of money or property" as a result of those FCEUA claims. See (Docs. 38, 39). Because Plaintiffs did not respond to the Court's invitation for the submission of additional support that would support a finding that Plaintiffs' remaining FCEUA claims survive summary judgment, the Court relies on the summary judgment record created prior to the issuance of the Court's September 30, 2016, Memorandum and

13

Order in reaching its decisions discussed below. See (Docs. 14-17, 20-21, 23-24, 36-37). Plaintiffs' remaining FCEUA claims will be discussed in turn.

A. Section 2270.4(b)(1)(ii) Claim

Plaintiffs allege that Defendant "violated 73 P.S. § 2270.4(b)(1)(ii) by communicating with any person other than the consumer and stating that such consumer owes a debt." (Doc. 1-1, p. 11). Pursuant to section 2270.4(b)(1)(ii) of the FCEUA:

> [w]ith respect to debt collection activities of creditors in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice . . . if . . . [a]ny creditor communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall: . . . (ii) not state that such consumer owes any debt . . . .

73 P.S. § 2270.4(b)(1)(ii). Plaintiffs claim that section 2270.4(b)(1) was violated "in November 2013, [when] Defendant called Plaintiffs' two friends[, Shawn Yorke and Donna Moyer,] and left messages on their answering machine stating that it was calling for 'Richard and Laura Baldwin,' that it was trying to contact them 'in regards to a debt,' and to please return as it was 'urgent.'" (Doc. 1-1, p. 8).

In its September 30, 2016 Memorandum and Order, the Court found that Plaintiffs' claim under section 2270.4(b)(1)(ii) concerning the message left with

Donna Moyer failed as a matter of law and, as a result, entered summary judgment in favor of Defendant as to that claim. See (Docs. 38, 39). As noted, the section 2270.4(b)(1)(ii) claim concerning the message Defendant left with Yorke, however, was allowed to proceed. (Id.).

Even though Plaintiffs' section 2270.4(b)(1)(ii) claim concerning Yorke survived Defendant's motion for summary judgment, as stated, the Court provided notice pursuant to Federal Rule of Civil Procedure 56(f)(3) that summary judgment independent of Defendant's motion may be warranted as to that claim. See (Id.). Specifically, the Undersigned found that the evidence presented in the summary judgment record did not support a finding that there is a genuine issue as to whether Plaintiffs suffered an ascertainable loss as a result of the section 2270.4(b)(1)(ii) claim concerning Yorke. See (Id.).

As noted above, the Third Circuit has found that claims under FCEUA must not only satisfy the relevant portion of the FCEUA, but it also must state a claim for relief under the UTPCPL. Kaymark, 783 F.3d at 182 (quoting Kern v. Lehigh Valley Hosp., Inc., 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015); citing Benner, 917 F. Supp. 2d at 360); Walkup, 147 F. Supp. 3d at 358. As stated, "[t]o maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) 'ascertainable loss of money or property, real or personal,' that occurs (2) 'as a

15

result of' the defendant's conduct prohibited under the UTPCPL." Jarzyna, 2016 U.S. Dist. LEXIS 60863, at *33 (E.D. Pa. May 6, 2016) (quoting Kaymark, 783 F.3d at 180). "Furthermore, a plaintiff's loss-causing reliance of the prohibited conduct must be justifiable for such conduct to give rise to a UTPCPL claim." Walkup, 147 F. Supp. 3d at 358 (citing Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479 (2004)).

Here, Plaintiffs claim that Defendant violated section 2270.4(b)(1)(ii) of the FCEUA when it left a voicemail message with Shawn Yorke. However, Plaintiffs have not provided any evidence that Shawn Yorke suffered an "ascertainable loss of money or property" as a result of that voicemail message. See (Doc. 1-1, p. 11); (Docs. 21). Even after having been notified that the summary judgment record is devoid of any evidence of Plaintiffs' "ascertainable loss of money or property," which occurred as a result of Defendant's voicemail message left with Yorke, and an invitation from the Court to provide such, Plaintiffs have not submitted any additional evidence to support this claim. See (Docs. 38, 39). Thus, there is nothing in the record that establishes that Yorke suffered an "ascertainable loss of money or property, real or personal," which occurred as a result of the voicemail message that was left with Yorke. See (Docs. 20, 21, 36). The record being devoid of such evidence requires a finding that Plaintiffs' have not demonstrated

that there is at the very least a genuine issue of material fact that they suffered an "ascertainable loss of money or property" due to the message Defendant left with Yorke. Therefore, Plaintiffs' claim under section 2270.4(b)(1)(ii) fails as a matter of law with respect to Yorke. See Jarzyna, 2016 U.S. Dist. LEXIS 60863, at *33-38. Consequently, summary judgment will be entered in Defendant's favor as to Plaintiffs' FCEUA claim under section 2270.4(b)(1)(ii) concerning the message Defendant left with Yorke.

### B. Sections 2270.4(b)(4) and (b)(4)(v) Claims

Plaintiffs allege that Defendant violated sections 2270.4(b)(4) and 2270.4(b)(4)(v) of the FECUA when it caused "Plaintiffs' telephone to ring repeatedly and continuously, as well as calling Plaintiffs and hanging up when they answered, with the intent to annoy, abuse and harass them." (Doc. 1-1, p. 9). Section 2270.4(b)(4) states that "[a] creditor may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." 73 P.S. § 2270.4(b)(4). Under section 2270.4(b)(4)(v), a creditor attempting to collect a debt violates the FCEUA by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number." 73 P.S. § 2270.4(b)(4)(v).

17

Here, the record establishes that Defendant placed eighty-six (86) telephone calls to Plaintiffs over one hundred and sixty-six (166) days. (Doc. 21, p. 11); (Doc. 24, p. 3). While the Court determined that this undisputed evidence sufficiently satisfies section 2270.4(b)(4)(v) of the FCEUA to survive Defendant's request for summary judgment, see (Docs. 38, 39), the record lacked any evidence that Plaintiffs suffered an "ascertainable loss of money or property, real or personal," as a result of the complained of telephone calls. See (Docs. 20, 21, 36). As noted, to date, Plaintiffs have not come forward with any evidence that creates a genuine issue of material fact that these eighty-six (86) calls caused them to suffer an "ascertainable loss of money or property." Therefore, Plaintiffs have not sufficiently demonstrated an "ascertainable loss" as required by the UTPCPL to survive summary judgment. Accordingly, Plaintiffs' FCEUA claim under section 2270.4(b)(4)(v) fails as a matter of law. See Jarzyna, 2016 U.S. Dist. LEXIS 60863, at *33-38. Thus, summary judgment will be entered in favor of Defendant as to Plaintiffs' FCEUA claim under sections 2270.4(b)(4) and (b)(4)(v).

C. **Sections 2270.4(b)(6) and (b)(6)(i) Claims**

Plaintiffs claim that Defendant violated sections 2270.4(b)(6) and (b)(6)(i) of the FCEUA when it failed to update its records to restrict calls to Plaintiffs' home and cellular telephones and when they called Plaintiffs' friends and

neighbors about the alleged debt. (Doc. 1-1, p. 12). Section 2270.4(b)(6) prohibits a creditor from using "unfair or unconscionable means to collect or attempt to collect any debt." 73 P.S. § 2270.4(b)(6). Section 2270.4(b)(6) contains a non-exhaustive list of conduct that constitutes "unfair or unconscionable means." 73 P.S. § 2270.4(b)(6).

While the Court determined that Plaintiffs' sections 2270.4(b)(6) and (b)(6)(i) claims survived Defendant's motion for summary judgment, see (Docs. 38, 39), similar to the FCEUA claims discussed above, the summary judgment record does not contain any evidence that Plaintiffs suffered an "ascertainable loss of money or property, real or personal," as a result of Defendant's alleged violations of sections 2270.4(b)(6) and (b)(6)(i). See (Id.). Also like the above claims, the Court allowed for Plaintiffs to submit evidence supporting their claim that they suffered an "ascertainable loss of money or property" due to the alleged violations of sections 2270.4(b)(6) and (b)(6)(i). (Id.). However, to date, Plaintiffs have failed to submit any evidence to support this claim. Thus, Plaintiffs have not demonstrated that there is even a genuine issue of material fact as to whether they suffered an ascertainable loss from the alleged violations of sections 2270.4(b)(6) and (b)(6)(i). Accordingly, Plaintiffs' FCEUA claim under sections 2270.4(b)(6) and (b)(6)(i) fail as a matter of law. See Jarzyna, 2016 U.S. Dist.

LEXIS 60863, at *33-38. Therefore, summary judgment will be entered in favor of Defendant as to Plaintiffs' remaining claim under sections 2270.4(b)(6) and (b)(6)(i).

## IV. **CONCLUSION**

Based on the foregoing, Plaintiffs have failed to establish a genuine issue of material fact that they suffered any ascertainable loss as a result of their remaining claims under sections 2270.4(b)(1)(ii) in relation to Plaintiff Yorke, (b)(4), (b)(4)(v), (b)(6), and (b)(6)(i) of the FCEUA. Consequently, Plaintiffs' remaining claims under the FCEUA, see (Doc. 1-1, pp. 11-12), fail as a matter of law. Thus, summary judgment will be entered in favor of Defendant as to these claims.

A separate Order will be issued.

Date: October 19, 2017

/s/ William J. Nealon
**United States District Judge**